# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE

ABC IP, LLC, a Delaware limited liability
company, and RARE BREED TRIGGERS,
INC., a Texas corporation,

Plaintiffs,        )
                 ) Case No. 1:25-CV-00389-CLC-CHS
v.                )
                 )      Hon. Curtis Collier
    TIMOTHY HOFFMAN, an individual,  )
    and HOFFMAN TACTICAL, LLC, a   )
    Tennessee limited liability company,   )
                 )
Defendants.       )

## RESPONSE TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

Timothy Hoffman ("Mr. Hoffman") and Hoffman Tactical, LLC ("HT"), hereinafter "Mr. Hoffman" respond as follows to the motion for preliminary injunction filed by the plaintiffs, ABC IP, LLC ("ABC") and Rare Breed Triggers, Inc. ("RBT"), hereinafter "Plaintiffs". [Doc. 14.].

Preliminary injunctions are "drastic and extraordinary" remedies that are "not to be routinely granted," *Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd*., 357 F.3d 1319, 1324 (Fed. Cir. 2004), and "never awarded as of right," *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008). In this case, the Plaintiffs, ABC and RBT, have not met the high standard for granting such extraordinary relief. The Court should, therefore, deny Plaintiffs' motion for preliminary injunction and enter an order terminating the temporary restraining order entered January 13, 2026.

## I.    Relevant Facts

Mr. Hoffman is a well-known and highly respected developer of firearm parts and accessories. *See* **Exhibit 1** (Declaration of Mr. Hoffman ("Hoffman Decl.") ¶ 4.). Mr. Hoffman's firearm part designs include designs for triggers, safeties, and other components for AR-15 style

1

rifles, including "repeat reset" trigger components that modify the rifle's safety selector, thus allowing the cycling action of an AR-15 rifle to repeatedly reset the trigger between shots, which allows the rifle to fire repeatedly when finger pressure is continually applied to and maintained against the trigger. **Ex. 1**, Hoffman Decl., at ¶ 5.

<u>History of "Forced-Reset" and Other Repeat Reset Trigger Systems</u>

Repeat reset triggers allowing a continuous trigger pull to result in more than one discharge of a firearm have existed since the 1930's. *Id.* at ¶ 7. A repeat reset system is a specialized semi-automatic trigger mechanism for a firearm that uses the firearm's cycling to physically push the trigger (and the shooter's finger) forward into the reset position after each shot, regardless of whether the shooter releases finger pressure from pulling the trigger. *Id.* ¶ 8-9. Thus, the trigger is effectively pulled again following each shot by maintaining pressure against the trigger. *Id.* ¶ 9.

Designer Thomas Allen Graves is generally credited with pioneering "Forced Reset Trigger" (FRT) style repeat reset trigger technology in the 1970s. *Id.* ¶ 10. In 2015, Mr. Graves filed a patent application that resulted in the issuance of U.S. Patent No. 9,568,264 entitled "Flex-fire Technology," ("the '264 patent") on February 14, 2017. On March 8, 2022, Rare Breed Triggers, LLC and Plaintiff ABC filed Case No. 4:22-cv-00107-GKF-JFJ in the U.S. District Court for the Northern District of Oklahoma against Mr. Graves and eight (8) other defendants alleging that Mr. Graves had given Plaintiffs' predecessor an exclusive license to the '264 patent but then continued manufacturing FRTs in violation of that exclusive license. *See*, *Rare Breed Triggers, LLC et al. v. Graves et al.*, Case No. 4:22-cv-00107-GKF-JFJ, (N.D. Okla. March 8, 2022). In settlement of this lawsuit, on November 22, 2024, Mr. Graves assigned ownership of the '264 patent and five other patents to Plaintiff ABC. *See* **Exhibit 7** (Assignment Abstract of Title, U.S. Pat. No. 9,568,264).

2

By the time Plaintiffs acquired Mr. Grave's patent rights in 2024, multiple third-party designers and manufacturers were producing and continue to produce alternative designs of FRT's. **Ex. 1** at ¶ 13. There are presently at least 19 manufacturers making different components that modify a firearm with repeat reset trigger functionality, with some designs being based on Mr. Graves early designs and others not. *Id.* ¶ 13. There are also at least 21 online sellers of these devices, in addition to many retailers that are only storefront-based or only sell at trade shows and the like. *Id.* at 16.

Historically, the market for FRTs was relatively small, due in part to questions surrounding the legality of making and owning FRTs and the United States Bureau of Alcohol, Tobacco, Firearms and Explosives' ("ATF") interpretation of FRTs as "machine guns." *Id.* at 17. However, around 2021, the ATF issued a series of letters and reports directed to their belief that FRTs were illegal. This culminated in a lawsuit between Plaintiff RBT and the U.S. government. On May 13, 2025, Plaintiff RBT and its principal, Lawrence DeMonico, entered into a Settlement Agreement with the U.S. Department of Justice (DOJ) establishing the legality of trigger components providing repeat reset functionality. *See* **Exhibit 3** (Settlement Agreement). As a condition of the agreement, Plaintiff RBT and Lawrence DeMonico agreed "to take all reasonable efforts to engage in patent enforcement seeking prohibitory injunctions against any person or entity that manufactures, sells, or distributes *any FRT during the life of U.S. Patent No. 10,514,223*." *Id.* at Pg. 5 ¶ 9 (*emphasis added*). In compliance with this term of the settlement agreement with DOJ, the Plaintiffs have filed numerous lawsuits accusing at least eleven defendants of infringing their patents, including the '223 patent, relating to FRT technology. **Ex. 1**, Hoffman Decl. ¶ 38.

<u>Mr. Hoffman's New Safety Selector Design</u>

On February 9, 2022 Plaintiffs sent Mr. Hoffman a cease-and-desist ("C&D") letter pursuant to a design for an AR-15 trigger component not at issue in the present lawsuit, alleging

3

that Mr. Hoffman was inducing infringement of U.S. Patent No 10,514,223 ("the '223 Patent") by placing design and 3D print files on the internet that could be downloaded. *See* **Exhibit 2** (February 9, 2022 letter from Wood Herron & Evans). Uninterested in pursuing a legal battle with Plaintiffs, Mr. Hoffman removed the files upon receipt of Plaintiffs' C&D letter. **Ex. 1**, Hoffman Decl., ¶ 18. This matter was settled on February 24, 2022 when Mr. Hoffman signed a settlement agreement agreeing to not infringe the '223 patent and to take down the old design and 3D print files from the internet, which he did previously upon receipt of the C&D letter. *Id.* ¶ 21.

Following the February 24, 2022 settlement involving the '223 patent, Mr. Hoffman designed new trigger components providing repeat reset trigger functionality, but that operate in a different and unrelated way than the '223 patent, use very different and much simpler components, and provide functionality absent from Mr. Graves' and RBT's prior designs. *Id.* ¶ 19. To the extent that Mr. Hoffman's new design finds inspiration in the prior art, it may be found in Col. 11, Par. 2, and FIG. 3 of U.S. Patent No. 7,398,723 ("the '723 Patent"), now expired.[1] *Id.* ¶ 22. However, this concept described in the '723 patent was unclaimed, and thus, it was dedicated to the public on July 15, 2008 upon issuance of the '723 patent. *CSP Techs., Inc. v. Sud-Chemie AG*, 643 F. App'x 953, 958-959 (Fed. Cir. 2016) citing *Johnson & Johnston Assocs. v. R.E. Serv. Co.*, 285 F.3d 1046, 1054 (Fed. Cir. 2002) ("When a patent drafter discloses but declines to claim subject matter, this action dedicates that unclaimed subject matter to the public. Application of the doctrine of equivalents to recapture subject matter deliberately left unclaimed would "conflict with the primacy of the claims in defining the scope of the patentee's exclusive right".).

---

[1] As with Mr. Hoffman's new design, this paragraph of the '723 describes components that prevent the cam that resets the trigger *via* carrier motion ("trigger reset cam") from acting on the trigger by shifting the trigger extender away from the cam. The key difference, and thus an inventive element of Mr. Hoffman's new design, is that this text of the '723 Patent describes components preventing the trigger reset cam from actively resetting the trigger by moving the trigger extender outside of the trigger reset cam's rotational path, while Mr. Hoffman's new design moves the trigger reset cam outside of the trigger's path. Yes, the result of repeatedly resetting the trigger is basically the same but, but the parts and thus both the function and way that the result is achieved are very different. *Id.* ¶ 22.

4

In relation to prior AR-15 trigger repeat reset system designs, Mr. Hoffman's new design provides improvements including a 3-position safety selector allowing safe, standard semi-automatic, and active semi-automatic operation and consists of two new parts and a modified standard trigger, thus being substantially cheaper to manufacture due to its simplicity and low relative parts count in relation to prior designs. **Ex. 1**, Hoffman Decl., ¶ 23. Mr. Hoffman's design progressed to detailed drawings around May of 2022 and culminated in Mr. Hoffman filing a provisional patent application covering his new components entitled "Active Firearm Trigger Mechanism" on September 28, 2022 as U.S. Application Number 63/377,498 ("the '498 Application"). *Id.*; s*ee also,* **Exhibit 4** (U.S. Provisional Patent Application Number 63/377,498).

In September of 2023 when Mr. Hoffman's U.S. provisional application neared its 1-year expiry date, Mr. Hoffman elected not to further pursue his pending patent rights. **Ex. 1**, Hoffman Decl. ¶ 24. Mr. Hoffman made this decision because, at the time, the ATF's efforts preventing sale of such trigger components was ongoing, and Mr. Hoffman did not believe the design was likely to be a commercial success. *Id.* ¶ 34. Instead, Mr. Hoffman uploaded the design and associated 3D print files to the internet on July 20, 2023, making the files available for public download. *Id.* ¶ 25. Many parties have downloaded Mr. Hoffman's uploaded files. For example, on July 25, 2023, five days after Mr. Hoffman made the files publicly available, the website Defense Distributed (DEFCAD.com) put Mr. Hoffman's files behind a paywall. *Id.* ¶ 25. In fact, prior to this Court's entry of the TRO, Mr. Hoffman's files or modified versions of them were available from eight known sites other than Mr. Hoffman's. *Id.* ¶ 25.

As of January 16, 2026, approximately two days after Mr. Hoffman took his files down pursuant to this Court's temporary restraining order, Mr. Hoffman's files or modified versions of them were available from thirteen other users. **Ex. 1**, Hoffman Decl. ¶ 25. Prior to Mr. Hoffman taking his files down, he estimates that 32,000 downloads occurred of his design files and

5

approximately 83,000 downloads of his 3D print files. *Id.* ¶ 25. Mr. Hoffman also is aware of ten companies known to make components in accordance with or based on Mr. Hoffman's new design for a safety-modified repeat reset trigger system. *Id.* ¶ 15.

On December 23, 2025, Plaintiffs filed the present lawsuit, alleging that Mr. Hoffman's new May 2022 design, which he published on July 20, 2023, infringes claims 15-23 of the '247 patent. *See* [Doc. 1], COMPLAINT. Plaintiffs also allege, for the first time in the multi-year history of Mr. Hoffman's and Plaintiffs' communications, that Mr. Hoffman's new May 2022 design infringes the '784 patent and the now-expired '723 patent. *Id.* On January 7, 2026, Plaintiffs filed the present motion seeking a preliminary injunction against Mr. Hoffman pending the outcome of the litigation. *See* [Doc. 14]. Mr. Hoffman was served with the complaint and the present motion on January 9, 2026, and on the same day, Plaintiffs filed a motion for a temporary restraining order (TRO) pending this Court's ruling on the present motion. *See* [Doc. 15]. Mr. Hoffman was not given notice of the motion for TRO until mere hours before the hearing, and by that time, it was too late for Mr. Hoffman to file a written response opposing the TRO. Thus, the TRO was entered on January 13, 2026. *See* [Doc. 20].

Mr. Hoffman would like to join the many other sellers of his product design, as he does not believe his new design to infringe any valid patent claims – a belief evidently held by many other sellers. **Ex. 1**, Hoffman Decl. ¶ 29. Mr. Hoffman had sold approximately 70 units prior to being enjoined by this Court. *Id.* ¶ 29. Preventing Mr. Hoffman from selling presently manufactured and anticipated-to-be manufactured product would result in a significant loss of sales and expected revenue, potential harm caused by failure to fulfill orders, and costs associated with tooling, transportation, and storage of enjoined products. *Id.* ¶ 30. There are much larger manufacturers who are selling, and will continue to sell, many more units than Mr. Hoffman, and when sued by

6

Plaintiffs, these other sellers will undoubtedly establish the noninfringement, invalidity, and/or unenforceability of the alleged claims in relation to Mr. Hoffman's design. *Id.* ¶ 31.[2]

## II. Standard of Decision

A patentee seeking a preliminary injunction must establish: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of the relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1375-76 (Fed. Cir. 2009); *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006). District Courts must apply this traditional four-factor test for all preliminary injunctions, and not a more lenient standard. S*tarbucks Corp. v. McKinney*, 602 U.S. 339 (2024). Failure of Plaintiffs to demonstrate any of these factors justifies denial of relief. *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1556 (Fed. Cir. 1994). The movant bears the burden of proving entitlement to preliminary relief "by a clear showing." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original).

A patent holder must show its likelihood of success proving both infringement and the patent's validity. *Entegris, Inc. v. Pall Corp.*, 490 F.3d 1340, 1351 (Fed. Cir. 2007). The patentee fails if the defendant raises a "substantial question" concerning either infringement or validity. *Altana Pharma AG v. Teva Pharms. USA, Inc.*, 566 F.3d 999, 1005-06 (Fed. Cir. 2009) (proof required to show invalidity "at this stage is lower than what is required to prove invalidity at trial"); *see also AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1050 (Fed. Cir. 2010) (patentee fails if defendant raises substantial question about infringement of any step of patent). There is a "substantial question" if the patentee fails to show that the plaintiff's defenses "lack substantial

---

[2] It is Mr. Hoffman's belief that a significant reason Plaintiffs filed the Motion for Temporary Restraining Order and the Motion for Preliminary Injunction against him is to deprive him from having the financial resources to publicly establish that the trigger component design described in his provisional patent application and later made publicly available for download was solely conceptualized and reduced to practice by him and does not infringe any valid and enforceable patent claim alleged by Plaintiffs. *Id.* ¶ 31.

7

merit." *Altana*, 566 F.3d at 1006. "*Vulnerability* is the issue at the preliminary injunction stage, while *validity* is the issue at trial." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1359 (Fed. Cir. 2001) (*emphasis added*).

## III. Analysis

### A     Plaintiffs have not shown they are likely to succeed on the merits.

### 1. Mr. Hoffman's Prototype Does Not Infringe any Claim of the Patents In Suit under a Valid and Thus Not Overbroad Claim Interpretation

Plaintiffs' request for a preliminary injunction should be denied because each of the asserted claims contains one or more limitations that are not found in Mr. Hoffman's design, and any effort by Plaintiff to interpret its patents otherwise results in invalidity of the patents. Patent infringement analysis requires two steps: The Court must first determine the "scope and meaning of the patent claims asserted," then it must compare the claim to the accused device to determine, as a matter of fact, whether all the claim limitations are present. *Cybor Corp. v FAS Techs.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (*en banc*). There can be no infringement if even one claim limitation is missing from the accused device. *See Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000).

"[T]he claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*). Claim terms must be "given their ordinary and customary meaning as understood by a person of ordinary skill in the art at the time of the invention." *David Netzer Consulting Eng'r LLC v. Shell Oil Co.*, 824 F.3d 989, 993 (Fed. Cir. 2016) (quoting *Phillips*, 415 F.3d at 1312-13). To determine how the skilled person would have understood disputed claim language, courts look to the words of the claims themselves, the patent specification, and the prosecution history. *Id*. A "person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in

which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313.

A patent claim is invalid if the specification does not enable the claimed invention. 35 U.S.C. § 112. "To be enabling, the specifications of a patent must teach those skilled in the art how to make and use the full scope of the claimed invention without undue experimentation." *Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1365 (Fed. Cir. 1993) (quoting *In re Wright*, 999 F.2d 1557, 1561 (Fed. Cir. 1993). A well-established tenant of enablement is that a single species does not enable a genus without one of ordinary skill in the art recognizing the genus members from the species. Thus, an adequate description of a genus requires disclosure of either a representative number of species or structural features common to members of the genus that would be recognized by one of ordinary skill in the art. *Ariad Pharmaceuticals, Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1350 (Fed. Cir. 2010). ("a sufficient description of a genus requires the disclosure of either a representative number of species falling within the scope of the genus or structural features common to the members of the genus so that one of skill in the art can 'visualize or recognize' the members of the genus.").

Claim invalidity also arises when the range of equivalents argued to be covered by a claim is so broad as to ensnare the prior art. *Tate Access Floors, Inc. v. Interface Architectural Resources, Inc.*, 279 F.3d 1357, 1367 (Fed. Cir. 2002); *Senmed, Inc. v. Richard-Allan Med. Indus., Inc.*, 888 F.2d 815, 821 (Fed. Cir. 1989); *Stewart-Warner Corp. v. City of Pontiac, Mich.*, 767 F.2d 1563, 1572 (Fed. Cir. 1985). In comparison to "pioneer" inventions, the invalidating effect of the prior art narrows the range of available equivalents. *Perkin-Elmer Corp. v. Westinghouse Elec. Corp.*, 822 F.2d 1528, 1532 (Fed. Cir. 1987).

### a. The Expired '723 Patent Cannot Support a Preliminary Injunction.

The '723 patent, consisting of a single claim directed to a "method" of operating a firearm, expired on September 22, 2024. Thus, there is zero chance that Plaintiffs can establish that Mr. Hoffman's design, or products incorporating the design, currently infringe the '723 patent. Any alleged infringement of the '723 patent by Mr. Hoffman, if proven, would be limited to monetary damages for _past_ infringement, _not_ to future injunctive relief. Even if Plaintiff's could prove that Mr. Hoffman's previously downloaded files somehow induced a manufacturer to make a product, and then that product was made available to users who _in turn_ infringed the '723 patent's method claim, there is no existent theory under which enjoining Mr. Hoffman today would mitigate such "past harm."

### b. No Claim of the '784 Patent is Infringed by Mr. Hoffman's New Design Unless Plaintiff Argues the Claims So Broadly as to Lose Enablement and Ensnare the Prior Art.

Plaintiffs include with their motion a claim chart for the '784 patent which they allege supports a likelihood of success on the merits. However, Plaintiff's claim chart compares the text of claim 1 (the only independent claim of the '784 patent) to images of Mr. Hoffman's trigger modification components, without providing any support from the '784 patent's specification or figures. _See_ [Doc. 15] pp. 8-13. In making this comparison, Plaintiffs take the language of the '784 patent claim out of the context where it may be enabled by the figures and text of the specification, and they assert a broader meaning that results in invalidity arising from (1) a lack of enablement for such a broadly argued claim, and (2) expansion of the claim's scope to ensnare the prior art.

Attached hereto as **Exhibit 5** is a claim chart showing the trigger component design of the '784 patent, Mr. Hoffman's design, and the prior art '723 patent design. _See_ **Ex. 5** ('784 patent claim chart). When one compares the trigger components of the alleged '784 patent vs. Mr. Hoffman's design, they show little commonality, as evident below with the '784 patent design

10

provided on the left and Mr. Hoffman's design represented in the middle. **Ex. 5**; *see also* **Ex. 1**, Hoffman Decl. ¶¶ 34, 36-37. However, when one compares the trigger components of the asserted '784 patent to the now expired '723 patent on the right, the commonality is undeniable. *Id*.



| **Asserted '784** | **Mr. Hoffman** | **Expired '723** |

While there is similarity between the standard bolt, trigger, disconnector, and hammer as found in any AR-15 rifle in these figures, one can see that Mr. Hoffman's safety selector cam modified with the vertical lever (represented in yellow) in the middle diagram is not comparable with the multiple parts (12, 22, 24, 28, 26, 20, and 40) depicted in the '784 patent trigger system design on the left. *Id*. Instead, the parts (12, 22, 24, 28, 26, 20, and 40) of the '784 patent trigger system have substantially more in common with the image on the right, which is the trigger system of the expired '723 patent. *Id*.

### i. Plaintiffs' overly broad interpretation of the claims of the '784 patent is not enabled.

Plaintiffs' argue that Mr. Hoffman's design infringes the functional claim language found throughout the '784 patent claims. However, Plaintiff's functional claim language is supported in the specification by only by a single described "species" embodiment. As discussed above, a "genus," (i.e., functional claim limitations interpreted to cover multiple physical embodiments) is not enabled by recitation in the specification and figures unless the patent discloses "either a representative number of species falling within the scope of the genus or structural features

11

common to the members of the genus so that one of skill in the art can 'visualize or recognize' the members of the genus." *See Ariad*, 598 F.3d at 1350. In the present case, the functional claim language throughout the claims of the '784 patent is not enabled by the specification if it is interpreted, as Plaintiffs suggest, to be broader than the single embodiment shown in the figures and described in the the specification of the '784 patent and its equivalents.

If an element in the accused product performs substantially the same function in substantially the same way to obtain substantially the same result as the missing element in the claimed invention, then there may be infringement under the "doctrine of equivalents." *Ethicon Endo-Surgery, Inc. v. United States Surgical Corp*., 149 F. 3d 1309, 1316 (Fed. Cir. 1998). However, the doctrine of equivalents ("DOE") cannot be used to expand claim scope to cover a wholly different and unrelated design, such as Mr. Hoffman's. Plaintiffs cannot argue that the words of the '784 patent claims are enabled beyond the single embodiment shown and described in the '784 patent. ('784 patent, Col. 4, Lines 58-60). Under the above-discussed *Ariad* test, the Plaintiffs are unlikely to succeed in arguing that the seven parts shown to the left of the trigger in the asserted '784 patent have any relation to, or would cause one of ordinary skill in the art to "visualize or recognize," Mr. Hoffman's yellow two-part design with a modified cam and vertical attached lever as represented in the middle figure above. *See Ariad, 598 F.3d at 1350.* Likewise, the likelihood that Plaintiffs could successfully establish that Mr. Hoffman's design functions in the same way as the parts represented in the asserted '784 patent or has only insubstantial differences with the parts of the asserted '784 patent, is at best remote and is certainly not likely.

### ii. Plaintiff's overly broad interpretation of the claims of the '784 patent is ensnared by the prior art.

Plaintiffs' argument that Mr. Hoffman's design infringes the '784 patent is also unlikely to succeed on the merits because expanding the claim scope of the '784 patent claims to cover Mr.

Hoffman's design would result in the '784 patent ensnaring the prior art, and thus becoming anticipated and/or rendered obvious by the prior art, including Plaintiffs' asserted but expired '723 patent. *See* **Ex. 5**. Claim 1 of the '784 patent requires a extending deflectable portion that is separately movable from a body portion. *Id*. at p. 3. In direct contrast, Mr. Hoffman's design lacks such a two-piece locking member having an "extending deflectable separately movable" and "body portion", or anything that could be argued as equivalent. *Id.* at p. 3. Thus, Mr. Hoffman's design lacks any comparable structure to the claimed "locking member" at least because to the extent Mr. Hoffman's design is argued to have an "extending portion", that portion of Mr. Hoffman's design is solid metal, cannot deflect or fold, does not avoid interfering contact with the forward portion of the bolt carrier as the bolt carrier cycles to the rear, and lacks a separately movable upwardly extending deflectable portion relative to a body portion as these terms are used in the specification and figures of the '784 patent. *Id*. at pp. 2-3. Neither does Mr. Hoffman's design have any structure that could be or could be argued as an equivalent of the "body portion" of the locking member required in the '784 patent. *Id*. at p. 5. Unlike the "body portion" of the '784 patent device, that does not pivot or displace with the "extending portion" of the locking member, the safety selector cam portion of Mr. Hoffman's design pivots with movement of the attached vertical lever. *Id*. at p. 5. As the parts of Mr. Hoffman's design are shaped, and thus work in a fundamentally different way than the parts of the '784 patent, both the function-way-result and insubstantial differences tests would fail regarding alleged equivalence. *Id.*

As also addressed in the attached claim chart, while not present in Mr. Hoffman's design, to the extent the Plaintiffs attempt to argue coverage of Mr. Hoffman's design by the claims of the '784 patent, the argued claim expansion would result in the claim elements being found in the trigger reset cam represented in the now expired '723 patent, and specifically, in the green

13

component that rotates between extended and deflected positions and has a "locking block" or "body portion" represented in orange with narrow hashing. *Id.* at pp. 3-4.

Any interpretation of the language of claim 1 of the '784 patent broad enough to cover Mr. Hoffman's new design lacks enablement and ensnares the prior art – thus being invalid. *See* **Ex. 5**. Mr. Hoffman has raised a substantial question concerning both infringement and invalidity of the '784 patent claims when they are broadened to cover his new design. *Id.* Having raised the requisite substantial question – in fact *multiple* substantial questions – Mr. Hoffman has established the required vulnerability of the '784 patent to noninfringement and invalidity. Hence, Plaintiffs cannot show a likelihood of success on the merits regarding either infringement or validity of the '784 patent claims sufficient for the granting of a preliminary injunction.

### c. No Claim of the '247 Patent is Infringed by Mr. Hoffman's New Design Unless Plaintiff Argues the Claims So Broadly as to Lose Enablement and Ensnare the Prior Art.

In their motion, Plaintiffs also provide a claim chart for the '247 patent. *See* [Doc. 1], pp. 19-28. However, similarly to the '784 patent discussed above, Plaintiffs take the language of the '247 patent claim out of the context where it may be enabled by the figures and text of the specification and assert a broader meaning than is supported, resulting in invalidity arising from (1) a lack of enablement for such a broadly argued claim, and (2) expansion of the claim's argued scope to ensnare the prior art.

Attached hereto as **<u>Exhibit 6</u>**, is a claim chart showing the trigger component design of the '247 patent, Mr. Hoffman's design, and the prior art '723 patent design. *See* **Ex. 6** ('247 patent claim chart). When one compares the trigger components of the '247 patent to Mr. Hoffman's design, they show little commonality, as evident below with the '247 patent design represented on the left and Mr. Hoffman's design represented in the middle. **Ex. 6**; *see also* **Ex. 1**, Hoffman Decl.

14

¶¶ 34, 35, 37).  However, when one compares the trigger components of the asserted '247 patent vs. the expired '723 patent on the right, the commonality is undeniable. *Id.*



**Asserted '247**        **Mr. Hoffman**       **Expired '723**

While there is similarity between the standard bolt, trigger, disconnector, and hammer as found in any AR-15 rifle in these figures, one can see that Mr. Hoffman's safety selector cam modified with the vertical lever (represented in yellow) in the middle diagram is not comparable with the green (trigger reset cam) and teal (disconnector disabling protuberance - teal color inside the blue outer ring) parts depicted in the '247 patent trigger system design on the left. *Id.*  Instead, the green and teal parts of the '247 patent trigger system have substantially more in common with the image on the right, which is the trigger system of the expired '723 patent. *Id.*

### i. Plaintiffs' overly broad interpretation of the claims of the '247 patent are not enabled.

Similarly to the '784 patent discussed above, Plaintiffs' argue that Mr. Hoffman's design infringes the '247 patent claim language, when such language is supported only by a single described "species" embodiment.  As discussed above, where only a single "species" is described in the specification and shown in the figures of a patent, a patentee cannot argue that functional claim language in the patent covers a larger "genus" of physical embodiments.  *See Ariad*, 598 F.3d at 1350 (Enablement requires "either a representative number of species falling within the scope

15

of the genus or structural features common to the members of the genus so that one of skill in the art can 'visualize or recognize' the members of the genus.")

Plaintiffs cannot argue that the functional language of the '247 patent claims are enabled beyond the single-embodiment figures present in the '247 patent and their available equivalents. Under the *Ariad* test, the Plaintiffs are unlikely to succeed in arguing that the claim language of the '247 patent should be extended to cover Mr. Hoffman's design, or that Mr. Hoffman's design should be held to infringe under the DOE. *See Ethicon,* 149 F.3d at 1316.

### ii. Plaintiffs' overly broad interpretation of the claims of the '247 patent are ensnared by the prior art.

Plaintiffs' argument that Mr. Hoffman's design infringes the '247 patent claims is also unlikely to succeed on the merits due to the fact that expanding the claim scope of the '247 patent claims to cover Mr. Hoffman's design would also expand the claims to ensnare the prior art, including Plaintiffs' asserted but expired '723 patent. *See* **Ex. 6**. Claim 15 of the '247 patent requires "rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catching said hammer hook" as described in the claim chart. *Id*. at p. 5. In direct contrast, Mr. Hoffman's design never prevents the disconnector hook from catching the hammer hook, thus lacking at least this required element of claim 15 of the '247 patent. *Id.* Neither can Mr. Hoffman's not preventing the disconnector hook from catching said hammer hook ever be the "equivalent" of the claim 15 requirement that said disconnector hook is prevented from catching said hammer hook. *Id.* This is because the prior art '723 patent design *also* never prevents the disconnector hook from catching the hammer hook, and so interpreting claim 15 of the '247 patent in this way would serve to ensnare the prior art '723 patent.

Claim 15 of the '247 patent also requires a "forced reset semi-automatic mode" where a "cam is in said second position." *See* **Ex. 6**, p. 4. Plaintiffs' cannot improperly broaden the claim

16

language requiring that "said cam is in said second position" to a construction where "the cam is in the second position during at least part of the cycle" to cover Mr. Hoffman's design. *Id.* "Is" cannot be interpreted to mean, "at least part". *Id.* Mr. Hoffman's design does not have the required forced reset semi-automatic mode where a cam "is in" a second position, as Mr. Hoffman's modified safety selector cam always starts and ends *in a first position*. *Id.* A second position cannot be the equivalent of a first or a third position, thus, Mr. Hoffman's design does not have an equivalent to this claim requirement. *Id.* The prior art '723 patent design also does not have the required forced reset semi-automatic mode where a cam is in a second position, as the prior art '723 trigger reset cam always starts and ends in a first position. *Id.*

Any interpretation of the language of claim 15 of the '247 patent broad enough to cover Mr. Hoffman's new design lacks enablement and ensnares the prior art, including the '723 patent design – thus being invalid. *See* **Ex. 6**. Mr. Hoffman has raised a substantial question concerning both infringement and invalidity of independent claim 15 of the '247 patent when the claim is broadened to cover his new design. *Id.* Having raised the requisite substantial question, Mr. Hoffman has established the required vulnerability of the '247 patent to noninfringement and invalidity. Hence, Plaintiffs cannot show a likelihood of success on the merits regarding either infringement or validity of independent claim 15 of the '247 patent sufficient for the granting of a preliminary injunction.

### d. Because Mr. Hoffman's New Design Does Not Infringe any Asserted Independent Claim of the Patents in Suit, Mr. Hoffman Also Cannot Infringe any Dependent Claim of the Asserted Claims.

Because Mr. Hoffman does not infringe any independent claim of the asserted patents, he cannot infringe any dependent claim. "One who does not infringe an independent claim cannot infringe a claim dependent on (and thus containing all the limitations of) that claim." *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552 n.9 (Fed. Cir. 1989). The expired '723 patent

17

and the '784 patent have a single independent claim: claim 1.  The '247 patent has four independent

claims: claim 1, 14, 15, and 20 with independent claim 15 being asserted.

### B.  Plaintiffs have failed to show irreparable harm.

Plaintiffs have failed to "make 'a clear showing' that it is at risk of irreparable harm, […]

which entails showing a 'likelihood of substantial and immediate irreparable injury.'" *Apple, Inc.*

*v. Samsung Elecs. Co.*, 678 F.3d 1314, 1325 (Fed. Cir. 2012), quoting *Winter*, 555 U.S. at 22. Far

from showing a likelihood of substantial and immediate irreparable injury, Plaintiffs offer only

speculation about lost sales.  Plaintiffs offer no evidence of past sales, market share, or price

stability.  Even if Plaintiffs had such evidence, any harm it might in theory suffer should it prevail

on the merits would be compensable with monetary damages. *Altana Pharma AG v. Teva Pharm.*

*USA, Inc.*, 566 F.3d 999, 1010–11 (Fed. Cir. 2009) (harms such as "price erosion, loss of market

share, loss of profits, loss of research opportunities, and possible layoffs" are not necessarily

irreparable).

### 1.    Plaintiffs are Too Late to Have Irreparable Harm from Continued File Downloads

It is said that "equity aids the vigilant not those who slumber on their rights." 30A C.J.S.

Equity § 125.  "[D]elay in seeking a remedy is an important factor bearing on the need for a

preliminary injunction." *High Tech Med. Instr., Inc. v. New Image Indus.*, 49 F.3d 1551, 1557 (Fed.

Cir. 1995) (delay "militates against the issuance of a preliminary injunction by demonstrating that

there is no apparent urgency to the request for injunctive relief."); *see also T.J. Smith & Nephew*

*Ltd. v. Consol. Med. Equip., Inc.*, 821 F.2d 646, 648 (Fed. Cir. 1987) (any presumption of

irreparable harm "would have been rebutted by [the] delay in seeking an injunction."); *Nutrition*

*21 v. United States*, 930 F.2d 867, 872 (Fed. Cir. 1991) ("substantial" delay of seven months

"suggests that the status quo does not irreparably damage [the plaintiff]").  Here, Plaintiffs have

not been vigilant in their claim for relief, and are thus not entitled to the relief they seek.

18

Mr. Hoffman's design and 3D printing files for his new and improved repeat reset safety selector have been available to the public since July 20, 2023 – close to 3 years. **Ex. 1**, Hoffman Decl. ¶ 25. These files are well-disseminated and many copies exist amongst multiple parties. *Id.* ¶ 25. Preventing future downloads from Mr. Hoffman's user account will have little to no effect on the public availability of the files. *Id.* ¶ 25. The purpose of a preliminary injunction is to prevent substantial and immediate irreparable injury, not address alleged harm that has been ongoing for close to three years. *Nutrition 21*, 930 F.2d at 872.

Plaintiffs assert that entry of a Preliminary Injunction forcing Mr. Hoffman to remove these files from his user account by this Court will somehow prevent future trespasses on Plaintiffs' patent rights. This is absurd, as the injunction can only prevent continued dissemination of the information *from Mr. Hoffman's user account*, not from other users' accounts, nor prevent private distribution amongst those already in possession of the files. At best, such an injunction would create a proliferation of additional users making the files publicly available, as has already occurred after Mr. Hoffman took the files down in response to this Court's order. **Ex. 1**, Hoffman Decl. ¶ 25. Continued public availability of Mr. Hoffmans' files is not a "genie" that Plaintiffs' will ever "put back in a bottle"; at best they will force such dissemination further behind pay walls and "underground". Plaintiffs' contention that allowing Mr. Hoffman to continue to permit public download of his files that have been publicly available for close to three years from his user account would somehow reduce Plaintiffs' ability to police the market also lacks merit.

No irreparable harm can be prevented or mitigated by maintaining this Court's Order for Mr. Hoffman to take the files down. The "status quo" should be maintained by allowing Mr. Hoffman's files to remain available to the public from his user account, as they have been for close to three years.

### 2. Plaintiffs are Too Late to Claim Irreparable Harm from Mr. Hoffman Selling His New Active Reset Safety Selector Components

At least 19 different entities are presently manufacturing – and more than 21 different entities are selling – trigger components that allow an AR-15 to repeatedly fire when the trigger is continuously pulled. **Ex. 1**, Hoffman Decl., ¶¶ 14-16. Plaintiffs have filed suit against at least eleven manufactures. *Id.* ¶ 38. Hence, every set of trigger components not sold by Mr. Hoffman will be sold by someone else. Plaintiffs' assertion that somehow stopping Mr. Hoffman from selling his components directly to consumers, when at least _twenty one (21)_ known online sellers are now, and have been, selling components similar to Mr. Hoffman's design since approximately May of 2025, is somehow "necessary to prevent irreparable harm" to Plaintiffs lacks basis.

"[L]ost market share must be proven . . . in order for it to support a preliminary injunction, because granting preliminary injunctions on the basis of speculative loss of market share would result in granting preliminary injunctions in every patent case where the patentee practices the invention." *Automated Merch. Sys. v. Crane Co.*, 357 Fed. Appx. 297, 301 (Fed. Cir. 2009) (internal citations omitted); *see also Apple*, 678 F.3d at 1324-25 ("A mere showing that [the patentee] might lose some insubstantial market share . . . is not enough."). This Court's granting of a Preliminary Injunction against Mr. Hoffman's intended sales would simply shift the market for his designs to someone else that is or soon will be selling such designs and deny Mr. Hoffman from participating in the existing market for his designs.

Consumers can already purchase trigger component designs actually covered by Plaintiffs' patents from Plaintiff Rare Breed Triggers. **Ex. 1**, Hoffman Decl. ¶ 29. Conversely, if consumers wish to buy Mr. Hoffman's trigger design, they can from many sellers other than Mr. Hoffman. *Id.* ¶ 16. Granting Plaintiffs' Motion for Preliminary Injunction regarding future component sales by Mr. Hoffman prevents no irreparable harm to Plaintiffs; it only serves to unfairly burden and

20

irreparably harm Mr. Hoffman. *Abbott Labs. v. Andrx Pharm., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006) (mere impact of competition on patentee's sales insufficient to establish irreparable harm).

Plaintiffs are aggressively policing the market, rightly or wrongly. Mr. Hoffman's ability to "flood the market for forced reset triggers with cheap infringing products" or "harming the market beyond repair" lacks merit, as Mr. Hoffman's ability to produce parts *pales in comparison* to the other manufacturers in the market (including others sued by Plaintiffs), many of which are much larger and have lower production costs than Mr. Hoffman. **Ex. 1**, Hoffman Decl. ¶15. Having many fewer and simpler parts than Plaintiffs' patented designs, Mr. Hoffman's new design is simply less expensive to manufacture than the designs covered by Plaintiffs' patents. *Id*. at ¶ 37.[3]

### C. The alleged harm can be quantified and compensated with money.

The Court should also deny Plaintiffs' motion because Plaintiffs have failed to demonstrate an alleged harm not compensable with money. It is elementary that to justify a preliminary injunction, the movant has the burden not only to provide actual evidence of harm, but also to show that "remedies available at law, such as monetary damages, are inadequate to compensate for that injury." *eBay v. MercExchange*, LLC, 547 U.S. 388, 391 (2006). "If a less drastic remedy . . . [is] sufficient to redress [a plaintiff's] injury, no recourse to the additional and extraordinary relief of an injunction [is] warranted." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 166-67 (2010).

Because the Plaintiffs have failed to show the inadequacy of money damages to address its alleged harm, there is no cause for this Court to issue the drastic remedy of an injunction. An alleged difficulty of calculating losses is insufficient to show irreparable harm for a preliminary injunction. *Nutrition 21*, 930 F.2d at 872.

---

[3] While Plaintiffs' margins are unknown, Mr. Hoffman's will likely be higher, and he has no intention of selling below cost as alleged by Plaintiffs.

### 1. Regarding Mr. Hoffman's files, if direct infringement can be established, so can money damages.

Plaintiffs' statements that it will have difficulty establishing monetary damages in relation to file downloads from Mr. Hoffman's user profile is misdirected in the context of a Motion for Preliminary Injunction, as such difficulty is an insufficient basis for such a drastic remedy. *eBay v. MercExchange*, LLC, 547 U.S. 388, 391 (2006). As previously established, whether Mr. Hoffman's files are obtained from his user account or another user or website, the files will continue to be publicly disseminated as they have been for close to three years. Any difficulty in Plaintiffs calculating damages for alleged induced infringement directly relates to a difficulty in determining the required direct infringement to have any damages at all.[4] Neither have Plaintiffs proffered any evidence of direct infringement by a third-party using files downloaded from Mr. Hoffman's user account. Plaintiffs have plead a wholly insufficient basis to establish induced infringement and thus any likelihood of success on the merits. A preliminary injunction does nothing to assist Plaintiffs in establishing direct infringement or monetary damages in response to the many previous and potential future file downloads from Mr. Hoffman's user account.

### 2. Money damages can fully compensate Plaintiffs for any infringing sales made by Mr. Hoffman.

To grant a preliminary injunction, a court must "balance the harm that will occur to the moving party from the denial of the preliminary injunction with the harm that the nonmoving party will incur if the injunction is granted." *Hybritech Inc. v. Abbot Labs.*, 849 F.2d 1446, 1457 (Fed. Cir. 1998). In balancing the hardships, the court "must consider the movant's showing of likelihood

---

[4] To establish induced patent infringement by Mr. Hoffman, the Plaintiffs must establish that (1) Mr. Hoffman actively encouraged infringement, (2) Mr. Hoffman knew (or was willfully blind to the fact) that the encouraged acts, if taken, would infringe the patent, not merely that those acts would be performed, and (3) Mr. Hoffman actuated direct patent infringement by those encouraging acts. *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060 (U.S. 2011). Contributory infringement cannot be established against Mr. Hoffman as his files are not a part of an infringing product. *See Cross Medical Products, Inc. v. Medtronic Sofamor Danek, Inc.,* 424 F.3d 1293, 1312 (Fed. Cir. 20025), citing 35 U.S.C. § 271(c).

22

of success." *Ill. Tool Works, Inc. v. Grip-Pak, Inc.*, 906 F.2d 679, 683 (Fed. Cir. 1990). However, the court remains "free to deny a preliminary injunction, whatever the showing of likelihood of success, when equity in light of all the factors requires." *Id.*

Here, the balance favors Mr. Hoffman. Preliminary injunctions are a drastic remedy, and "[t]he hardship on a preliminarily enjoined manufacturer who must withdraw its product from the market before trial can be devastating." *Ill. Tool Works*, 906 F.2d at 683. If enjoined and required to not sell his trigger components into the existing market, Mr. Hoffman would face serious hardships, including significant loss of sales and expected revenue, potential harm caused by failure to fulfill outstanding orders, and costs associated with transportation and storage of enjoined products. **Ex. 1**, Hoffman Decl. ¶ 30. Perhaps most significantly, if Mr. Hoffman is improperly enjoined, he could incur considerable reputational damage and lack the resources to vigorously defend the present litigation.

Plaintiffs are no more harmed by Mr. Hoffman's anticipated sales of his design than by sales of his design by other manufacturers. Plaintiffs can as easily determine monetary damages for Mr. Hoffman's sales, as they can for any of the multiple other sellers and similarly recover damages in the unlikely event they exist when this and multiple other cases are decided on the merits. Plaintiffs' allegation that monetary damages cannot compensate for sales made by Mr. Hoffman lacks merit, and Plaintiffs provide no evidence to support such an allegation. Lacking evidence of actual hardship resulting from Mr. Hoffman's future sales, movant fails to tip the balance of equities resulting from a preliminary injunction in its favor – in fact, quite the opposite results if Mr. Hoffman remains enjoined from selling his version of his design.

### D. An injunction against Mr. Hoffman fails to serve the public interest.

Contrary to Plaintiffs' assertion, the public interest is not served by granting a preliminary injunction against Mr. Hoffman; it is best served by allowing Mr. Hoffman to continue to provide

23

his design files for public download and to market and sell his products during the pendency of this litigation, thus allowing consumers to pick the products they want, given the totality of the features offered. Plaintiffs seem to argue that because it acquired some patents covering a few, specific forced reset trigger designs, anyone else who, in good faith, designs around their limited patent rights (resulting from significant prior art including the '723 patent) is a scofflaw. This is exactly the opposite of why the patent laws exist.

There is nothing immoral or otherwise wrong about providing the public with a product resulting from a "design around" of existing patent rights. *State Industries, Inc. v. A.O. Smith Corp*., 751 F.2d 1226, 1235-36 (Fed. Cir. 1985) ("...[K]eeping track of a competitor's products and designing new and possibly better or cheaper functional equivalents is the stuff of which competition is made and is supposed to benefit the consumer.") "One of the benefits of a patent system is its so-called 'negative incentive' to 'design around' a competitor's products, even when they are patented, thus bring[ing] a steady flow of innovations to the marketplace." *Id.* Patent claims must be "particular" and "distinct" as required by 35 U.S.C. § 112 so that the public has fair notice of the metes and bounds of the claimed invention so other parties can avoid infringement and design around the patent. *See London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1538 (Fed. Cir. 1991). Design-around is encouraged in the patent law and serves the public interest. *Id.*

Likewise, simply owning a patent is not justification for thwarting legitimate competition through a preliminary injunction. If so, every patent lawsuit would result in a temporary market monopoly before the case is decided on the merits. Further, there is a clear public interest in promoting competition in the marketplace, which would be undermined if a preliminary injunction is granted. *See Lear, Inc. v. Adkins*, 395 U.S. 653, 670 (1969) ("[T]he equities of the licensor do not weigh very heavily when they are balanced against the important public interest permitting full and free competition in the use of ideas which are in reality a part of the public domain."). At the

24

preliminary injunction phase, public interest in the protection of patent rights is counterbalanced by Mr. Hoffman's "continuing right to compete, which must be seen as legitimate at this motion stage." *Ill. Tool Works,* 906 F.2d at 684.

Further, given its delay in bringing this lawsuit regarding Mr. Hoffman's design and 3D printer files and the many other parties selling trigger components based on Mr. Hoffman's designs, Plaintiffs should not now be heard to argue there is a public interest in protecting its current patent rights when Plaintiffs were unconcerned with enforcing those rights for such an extended period of time. Additionally, suggesting that allowing Mr. Hoffman to sell his design would somehow "flood" and thus alter the already existent and developed market lacks basis in fact or reality.

The public interest in this situation is best served by recognizing Mr. Hoffman's continued right to compete by joining the existing market pending a full determination of the questions of noninfringement, invalidity, and unenforceability on the merits. This public interest is not offset by any concern about undermining patent rights because Mr. Hoffman's trigger components do not infringe any asserted valid and enforceable claim of the patents in suit. Neither is the public interest served by allowing Plaintiffs' to extend patent rights beyond their proper metes and bounds.

**IV. Conclusion**

For the foregoing reasons, Mr. Hoffman respectfully request this Court deny Plaintiffs' motion for preliminary injunction and lift the temporary restraining order of January 13th, 2026.

Respectfully submitted this 23rd day of January, 2026.

s/Jacob Horton
Jacob G. Horton (TN BPR # 025467)
Blanchard Horton PLLC
PO Box 5657
Oak Ridge, Tennessee 37830
(865) 269-2673
JHorton@blanchard-patent.com
***Counsel for Defendants***

25

**CERTIFICATE OF SERVICE**

     I hereby certify that on January 23, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by U.S. Mail. Parties may access this filing through the Court's electronic filing system.

s/Jacob Horton