EXHIBIT

1

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**KNOXVILLE DIVISION**

ABC IP, LLC, a Delaware limited liability
company, and RARE BREED TRIGGERS,
INC., a Texas corporation,

Plaintiffs,                                                   )
                                                             ) Case No. 1:25-CV-00389-CLC-CHS
v.                                                           )
                                                             )          Hon. Curtis Collier
   TIMOTHY HOFFMAN, an individual,        )
   and HOFFMAN TACTICAL, LLC, a            )

Tennessee limited liability company,                          )
                                                             )
       Defendants.                 )


**DECLARATION OF TIMOTHY HOFFMAN IN SUPPORT OF**

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY**

**INJUNCTION**

     I, Timothy Hoffman, hereby declare under penalty of perjury that, to the best of my

knowledge, the following statements are true and correct:

1.   I am over eighteen years of age and reside in Englewood, Tennessee.

2.   I am the sole owner of Hoffman Tactical, LLC.

3.   I have reviewed the complaint, motion for temporary restraining order, and the

    motion for preliminary injunction as filed by the plaintiffs, ABC IP, LLC

    ("ABC") and Rare Breed Triggers, Inc. ("RBT"). I have also reviewed U.S.

    Patent No 10,514,223 ("the '223 Patent"); U.S. Patent No. 7,398,723 ("the '723

Page **1** of **17**

Case 1:25-cv-00389-CLC-CHS    Document 26-1    Filed 01/23/26    Page 1 of 18
               PageID #: 314
                              Doc ID: b365bde9d5825e9548adedf0c74a1f40762f37d1

EXHIBIT
1

Patent"); U.S. Patent No 12,038,247 ("the '247 Patent"); and U.S. Patent No 12,031,784 ("the '784 Patent").

4. The settlement agreement that I signed on February 25, 2022 states in paragraph 4 that I am a well-known and highly respected developer of firearm parts and accessories. (Settlement Agreement, Plaintiffs' Exhibit D, Page 1).

5. Among other things, I design parts for firearms including designs for triggers, safeties, and other components for AR-15 style rifles including repeat reset trigger components that modify the rifle's safety selector to allow the cycling action of an AR-15 rifle to repeatedly reset the trigger between shots and fire again after each reset if finger pressure is continually applied to the trigger.

6. While "automatic" firearms fire repeatedly without resetting the trigger between each shot when the trigger is continuously pulled, mine and many other designs work differently by resetting the trigger after each round is fired. My design may be thought of as components that allow a "repeat reset" of the trigger after each round is fired.

7. I am not the first and do not expect to be the last to design such parts to modify a semiautomatic firearm to repeatedly reset the trigger. I believe such repeat reset trigger designs have existed since the 1930's, such as in U.S. Patent 2,056,975.

8. Unlike with an automatic firearm, my modification results in the trigger fully resetting with every shot fired, the trigger reset just occurs more rapidly than in a standard semiautomatic firearm if force is continuously applied to the trigger.

9. In repeat reset trigger designs, such as mine and others, the firearm's cycling is used to physically push the trigger (and the shooter's finger) forward into the reset position after each shot, regardless of whether the shooter releases finger pressure

**EXHIBIT**

**1**

from pulling the trigger. Thus, the trigger is quickly pulled again following each shot by maintaining continuous pressure against the trigger, but is not considered "automatic".

10. Some people refer to a firearm having the ability to repeatedly reset the trigger after each shot is fired as a forced reset trigger ("FRT") as Thomas Allen Graves is generally credited with pioneering FRT style repeat reset trigger technology beginning in the 1970s.

11. Over several decades, Mr. Graves developed the initial concepts of FRT technology and applied the concept to various firearm platforms before developing an FRT for the AR-15 rifle.

12. I believe that Mr. Graves defaulted in a lawsuit filed against him by Plaintiffs as he lacked the ability and funds to defend himself.

13. From 2024 onward, multiple third-party designers and manufacturers were producing different repeat reset trigger designs including those based on Mr. Grave's and other designs.

14. These nine companies are known to me to make components based on the Graves or other FRT designs:

Arizona Regulator, Higley AZ:.https://arizonaregulator.com/shop-all/

Partisan Triggers:.https://partisantriggers.com/

Rare Breed Triggers, Wichita Falls, TX:.https://rarebreedtriggers.com/

Tommy Triggers: https://www.sigwoarms.com/shop/tt-5001-lfr-ez-sleeve-ak-tommy-triggers-801

Plinkify: https://plinkify.com/product/kono-ak-trigger-assisted-reset-system/

Freedom Finger Triggers: https://freedomfingertriggers.com/

Doc ID: b365bde9d5825e9548adedf0c74a1f40762f37d1

EXHIBIT

1

Redacted Industries, Dubuque, IA: https://redactedinnovation.com/shop/

Advanced Reset Tech: https://advancedresettech.com/

TX Triggers USA, Fort Worth, Tx: https://texastriggerusa.com/product-category/frt/

15. The following 10 companies are known to me to make components in accord with

or based on my new design for a safety-selector-modified repeat reset trigger

system. Some of these companies have much lower production costs arising from

economies of scale and other factors regarding parts production than do I.

Fudd Arms: https://fuddarms.com/products/s7c-super-safety-kit

Grey Market Research: https://greymarketresearch.net/safety-products/

Z3 Productions: https://www.z3pro.com/product-page/copy-of-batch-7-cpm-10v-a2-ar-super-safety-kit

2AG: https://2agsupersafety.com/

Stark80: https://stark80.com/home/shop/?orderby=date

Deez Nuts Tactical: https://deeznutztactical.com

Polymer Pew: https://polymerpew.com/

URSA Security: https://ursa-sec.com/product/tim-hoffman-super-safety-kit/

Atrius: https://atrius.dev/atrius-forced-reset-selector/

AS Designs: https://activesafetydesigns.com/ss-parts/

16. I am aware of over 21 known online sellers of repeat reset trigger components, in

addition to many retailers that are only storefront-based or only sell at trade shows

and the like.

17. The market for FRT's was relatively small prior to 2025, due in part to questions

surrounding the legality of making and owning FRT's and the United States

Bureau of Alcohol, Tobacco, Firearms and Explosives's ("ATF") interpretation of

FRT's as "machine guns."

18. On February 9, 2022 a C&D letter was sent to me based on U.S. Patent No

10,514,223 ("the '223 Patent") alleging that I was inducing infringement by

EXHIBIT

1

placing design and 3D print files for trigger components on the internet that could

be downloaded. These designs were very close to those in the '223 patent, which

I was unaware of until I received Plaintiffs' C&D letter, so I took my files down

from the internet shortly after receiving Plaintiffs' letter. I earned no revenue

from these file downloads.

19. Now that I knew about the '223, I started work designing new trigger components

that would provide repeat reset trigger functionality, but that operated in a

different and unrelated way than this patent, used very different and much simpler

parts, and provided functionality absent from Mr. Graves' and RBT's prior

designs.

20. In a discussion with representatives from Rare Breed Triggers I told them that I

had a new idea for a repeat reset system that designed around the '223 patent and

hoped that we could co-exist in the market with our different designs.

21. On February 24, 2022, I signed a settlement agreement agreeing to not infringe

the '223 patent and to take down my old design and 3D print files from the

internet, which I had already done.

22. Of the patents I have looked at since I designed my new repeat reset safety

design, the only patent that I believe described something similar to how my

system operates is found in Col. 11, Par. 2, and FIG. 3 of the expired '723 patent.

This paragraph describes components that prevent the cam that resets the trigger

via carrier motion ("trigger reset cam") from acting on the trigger by shifting the

trigger extender away from the cam. The key difference with my design is that

this text of the '723 Patent describes components preventing the trigger reset cam

from actively resetting the trigger by moving the trigger extender outside of the

EXHIBIT

1

trigger reset cam's rotational path, while my new design moves the trigger reset cam outside of the trigger's path. The result of repeatedly resetting the trigger is basically the same, but the parts I used and the way my system works is different.

23. In relation to prior AR-15 trigger system designs providing repeated trigger resets and thus firing cycles with a maintained trigger pull, my new design provides improvements including a 3-position safety selector allowing safe, standard semi-automatic, and active semi-automatic operation and consist of only two new parts and a modified trigger, thus being substantially cheaper to manufacture. Unlike stated by Plaintiff, my new design uses very different and fewer parts, works in a very different way, and is a substantially more elegant design than those covered in Plaintiff's patents, and is thus much cheaper to manufacture due to its simplicity and few parts. My work on designing the new trigger components progressed to detail drawings around May of 2022 and I filed a provisional patent application covering my new design titled "Active Firearm Trigger Mechanism" on September 28, 2022 as U.S. Application Number 63/377,498 ("the '498 Application").

24. Later, in September of 2023 when my U.S. provisional application neared its 1-year filing expiration date, I did not continue to pursue my patent rights by filing the required nonprovisional application. While now regrettable, this seemed reasonable at the time as I undervalued the technology due to the ATF interpretation of such trigger components, was not in a financial position to hire a patent attorney, and thought that donating my invention to the public was a good thing to do.

EXHIBIT

1

25. Instead of filing a nonprovisional patent application for my new and improved repeat reset trigger components, I uploaded my design and 3D print files to the internet on July 20, 2023, making the file available for public download from a file-sharing website. Since this date, many copies have been downloaded and exist amongst multiple parties – including some uses I prefer would not have happened. For example, on July 25, 2023, five days after I first made my files publicly available, the website Defense Distributed (DEFCAD.com) put my files behind a paywall and charged the public for them. The only reason others did not make the files available is that I continued to offer them for download. For example, prior to this Court's entry of the TRO copies of my files or modified versions of them were available from 8 known users other than me, however, as of January 16, 2026, thus approximately two days after I prevented downloads from my user account, I located additional duplicates of my files being available from 13 other users. Before I took my files down, I estimate that 32,000 downloads occurred of my design files and approximately 83,000 downloads of my 3D print files. I base this estimate on these numbers being approximately one-half of the times the files were viewed and from past experience with other projects, about one-half of the people who view files download them.

26. On April 2, 2025 a third party that was making and selling trigger components based on my downloadable files (I do not know from where he obtained them) informed me that he had received a C&D letter from Plaintiffs alleging infringement of U.S. Patent No 12,038,247 ("the '247 Patent").

27. Later in April of 2025 a journalist arranged a call between Cole Leleux, Managing Member of ABC, Lawrence DeMonico, President of RBT, and myself as the

EXHIBIT

1

journalist had found out about the C&D letter being sent to the third party. During these discussions either Lawrence, Cole, or both told me that they believed the '247 patent claims covered my designs. I was surprised by this. I then reviewed the '247 Patent and determined that all the drawings and operation descriptions in the patent specifications were unrelated to my new design. I looked at the file history of the '247 Patent and saw that claims 15-23 of the '247 Patent were filed on April 4, 2024 so thought they could not cover my previously published design. I then called Cole and told him that the '247 patent had nothing to do with my design, and that claims 15-23 of the '247 patent were filed after I published my design on the internet.

28. In August of 2025 Lawrence and Cole visited my booth at a trade show in Knoxville and saw a prototype of my design and told me that it infringed their '247 patent. As before, I told them that my design could not infringe their '247 patent as my design was unrelated and used none of their parts and worked in a completely different way. I was not aware they also believed my design to infringe their '784 patent until the present lawsuit.

29. Now, I would like to join the many other people selling my designs, and I do not believe that my new designs have anything to do with Plaintiffs' patents. Prior to entry of the TRO, I sold approximately 70 sets of safety selector replacement components. If consumers want to buy trigger components covered by Plaintiffs' patents, customers can buy such components from the Rare Breed Triggers website.

EXHIBIT

1

30. Preventing me from selling the component of my new design res̲̲̲̲̲ ̲̲̲ ̲̲

significant loss of sales and expected revenue, the inability to ship orders, and me

losing the money I paid for tooling and to have the first batch of parts made.

31. I believe that a significant reason Plaintiff filed the Motion for Temporary

Restraining Order and the Motion for Preliminary Injunction against me and my

company is that the Plaintiffs do not want me to have the money to defend myself

and thus have to sign over the rights in my new design to settle the present lawsuit

as previously happened with Mr. Graves. Manufacturers much larger than myself

are already selling components made with or similar to my designs and have the

funds to establish that the products they are selling are a design-around of

Plaintiffs' patents.

32. The images below represent the relevant components of a standard AR-15

trigger system with labels. The safety selector has two parts, the "cam" portion that

fits inside the rifle and contacts the trigger, and the outside "selector" portion that

when moved by the user selects between safe and semi-automatic modes.



33. U.S. Patent No 10,514,223 ("the '223 patent"): While not presently alleged

against me due to the settlement agreement of February 25, 2022, this patent was

Page **9** of **17**

Case 1:25-cv-00389-CLC-CHS     Document 26-1     Filed 01/23/26     Page 9 of 18
PageID #: 322
Doc ID: b365bde9d5825e9548adedf0c74a1f40762f37d1

EXHIBIT

1

the basis of Plaintiff's February 9, 2022 C&D letter to me and describes using the hammer (red) to transfer force from the bolt carrier (purple) to the trigger (pink) to forcefully reset the trigger in combination with a locking bar (green) that prevents the trigger from being pulled again until the forward motion of the bolt carrier unlocks the locking bar as the bolt completes its forward movement. The locking bar is not present in a standard AR-15 trigger as shown above. This patent adds to the technology of U.S. Patent 9,146,067 by adding the locking bar. The Rare Breed Trigger website sells a trigger system made under this patent as the FRT-15L3. (https://rarebreedtriggers.com/product/frt-15l3-2/). Below is a colorized version of the relevant portion of FIG. 3 from the '223 patent.



**FIG. 3**

34. U.S. Patent No. 7,398,723 ("the '723 patent"): Plaintiffs allege that my new design infringes this patent, however, this patent expired on September 22, 2024

EXHIBIT

1

and thus seems irrelevant to Plaintiffs' Motion for Preliminary Injunction. The

'723 Patent has a single method claim. This patent is prior art to the '784 and

'247 patents now asserted against me as it issued long before they were filed. The

'723 Patent describes two additional parts not present in a standard AR-15 trigger,

a "trigger reset cam" (shown in green) and a rectangular trigger extender (shown

in orange with narrow hashing). The disconnector (shown in orange with wide

hashing) is modified in relation to a standard AR-15 trigger. In the '723 patent

design, the trigger reset cam is rotated by the rearward motion of the bolt carrier

(purple) to transfer force from the bolt carrier through the trigger extender to reset

the trigger (pink) and thus prevent the trigger from being pulled again until the

forward motion of the bolt carrier restores the trigger reset cam to its starting

position as the bolt carrier completes its forward movement. Below is a colorized

version of the relevant portion of FIG. 2 from the '723 patent.



FIG. 2

EXHIBIT

1

35. U.S. Patent No 12,038,247 ("the '247 patent"): Plaintiffs allege that my new design infringes this patent. The '247 patent relies on a trigger reset cam (green) as in the prior '723 patent that forces a partial trigger reset so that a semi-circular section of the safety selector (disconnector disabling protuberance - teal color inside the blue outer ring), when selected by the user, disables the trigger disconnector (orange) to switch operation between standard semi-automatic and forced-reset semi-automatic. In the original provisional filing of this application, the trigger reset cam was stated to be "pivotally" mounted, while in the nonprovisional of May 30, 2025 the same cam was stated to be "movably" mounted with no additional figure or explanatory support for the difference. Claims 1-14 of this patent have a filing date of September 8, 2022 if supported in the provisional application or a filing date of May 30, 2025 if only supported in the nonprovisional. Claims 15-23 have a filing date of April 4, 2024 unless they are supported in the prior nonprovisional or provisional filings. In relation to the prior '723 patent, this patent provides a different way to select between standard semiautomatic and forced reset semiautomatic using the disconnector disabling protuberance instead of the '723 patent's rectangular trigger extender. The advantage of the '247 patent design over the '723 patent design is that the '247 patent design uses fewer parts and is more robust. Below is a colorized version of the relevant portion of FIG. 9D from the '247 patent.

EXHIBIT

1



**FIG. 9D**

36. U.S. Patent No 12,031,784 ("the '784 patent"): This patent is exerted against me and describes an improvement to the older '223 patent locking bar where interference with the bolt carrier's (16) rearward reciprocation (46) and the locking bar (26) is prevented by the addition of a foldable extension (22) to the locking bar that deflects to the rear. Due to the foldable extension, the locking bar does not interfere with the rearward reciprocation of the bolt carrier. The foldable extension of the locking bar returns to its extended vertical position so that the forward reciprocation of the bolt carrier (not shown) may pivot the locking bar to release the trigger (14). Below is a colorized version of the relevant portion of FIG. 7 taken from the '784 Patent.

**EXHIBIT**

**1**



FIG. 7

37. U.S. Application Number 63/377,498 ("the '498 Application"): I filed this patent
application for my new design without much understanding of the patent system
and without the assistance of counsel. Unlike in a standard AR-15 trigger design
or any of the in-force patents above, I modified the safety selector cam (yellow
round portion shown below) with a vertical lever (yellow vertical portion) that
can transfer torque from the bolt carrier to the safety selector cam. I also
modified the safety selector cam to have detent tracks allowing the user to move
the safety selector cam to selectively align the cam and safety selector surfaces
with the trigger to select between three modes of operation: safe, standard semi-
automatic, and active reset semi-automatic. While the standard AR-15 trigger
(brown) requires some modification, the hammer (red) and disconnector (orange)

**EXHIBIT**

**1**

remain standard AR-15 parts. Also working in a completely different way than any of the trigger modifications described in the above in-force patents, my design uses completely different parts and only requires two new and one modified part, and is thus more robust and less expensive to manufacture than the above patented designs. I believe it is clear that my yellow parts below are completely different and work in an unrelated way to the parts in the in-force patents previously addressed. I consider my new design to be an improvement over the system described in Col. 11, Par. 2, and FIG.3 of the expired '723 patent. Below is Plaintiff's colorized version of my design as present in my '498 patent application that is sufficiently correct for this discussion.



38.    I have been made aware that Plaintiffs have litigations ongoing accusing multiple defendants of infringing their patents, including the '223 patent, relating to FRT technology. A list of known cases pending from Plaintiffs is as follows:

EXHIBIT

1

ABC IP, et al. v. 80 Mills, et al., 1:25-CV-1262 (N.D. Ohio)

ABC IP, et al. v. Harrison Gunworks, et al., 4:25-cv-00299 (E.D. Idaho)

ABC IP, et al. v. Hanes Tactical, et al., 3:25-cv-00201 (W.D. Tex.—El Paso Div.)

ABC IP, et al. v. Kline, 3:25-cv-454 (S.D. Miss.—Northern Div.)

ABC IP, et al. v. Nguyen, 4:25-CV-2961 (S.D. Tex.—Houston)

ABC IP, et al. v. Z3 Productions, et al., 5:25-cv-00695 (W.D. Okl.)

ABC IP, et al. v. Dairyland Defense, et al., 2:25-cv-00852 (E.D. Wis.—Milwaukee Div.)

ABC IP, et al. v. Spider Hole LLC, et al., 1:25-cv-00864 (W.D. Tex.—Austin Div.)

ABC IP, et al. v. AS Designs, et al., 1:25-cv-01192 (M.D.N.C.)

ABC IP, et al. v. *Timothy Hoffman, et al.,* 1:25-cv000389 (ED Tenn)

ABC IP, et al. v. Firearms Sys, LLC, et al., 2:25-cv-04938 (D. Ariz.)

39.    I feel compelled to comment on item 12 as found in Plaintiffs' Motion for Preliminary Injunction reproduced below.  While the text attributed to me and reproduced in the document is mine, the Plaintiffs have taken my statements egregiously out of context.  The initial design files that I characterized as being a "clone" in the statement below relate to my old files that I took down from the internet within days of receiving Plaintiffs' February 9, 2022 C&D letter due to my respect of the patent system and the law.  When I prepared those files and uploaded them, I was unaware of the 10, 514,223 patent asserted in Plaintiffs' C&D letter.  My statements below regarding "working near the edge" and "that the federal government does not have unlimited power…." had no relation to the patent system, but were made in relation to ATF rules existing at the time and not self-regulating out of fear of improper government enforcement that I amongst many other correctly believed to be overreach.  The courts agreed and reversed these rules.  Plaintiffs are well-aware of

Page **16** of **17**

Case 1:25-cv-00389-CLC-CHS        Document 26-1        Filed 01/23/26        Page 16 of 18
PageID #: 329
Doc ID: b365bde9d5825e9548adedf0c74a1f40762f37d1

EXHIBIT

1

the context in which I made these statements.

12.     Hoffman has further stated that in releasing the Infringing Device,

the super safety project was something that sort of just happened. It came up because of [*sic*] **I had an idea one day to…basically clone the…Rare Breed style…force reset trigger which I did**…. [After the cease and desist letter] I started just thinking about other ways of doing it more of just because I wanted to keep doing it…you know sort of like as an obstacle to overcome and then once I did I think really **what motivated that project and I can sort of say this now…more than in the past I don't think I've really said this before publicly, but what really motivated that project is I want people to be more comfortable working near the edge**. So instead of being scared and trying to self-regulate, being more comfortable working actually inside of our current legal framework and…**realizing that the federal government does not have unlimited power to just crush you…if it's a lot of people kind of working together and saying no, this is actually legal and we can do it, which is…basically what's happened.**

**FURTHER, Declarant sayeth not.**

_____

Timothy Hoffman

Executed on ___01 / 23 / 2026___.

Page **17** of **17**

Case 1:25-cv-00389-CLC-CHS     Document 26-1     Filed 01/23/26     Page 17 of 18
PageID #: 330
Doc ID: b365bde9d5825e9548adedf0c74a1f40762f37d1


| | |
|---|---|
| **Title** | TSMT_0006_LIT 2026.01.23 Ex.1 Hoffman Declaration.pdf |
| **File name** | TSMT_0006_LIT%202...20Declaration.pdf |
| **Document ID** | b365bde9d5825e9548adedf0c74a1f40762f37d1 |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | ● Signed |

**This document was requested from app.clio.com**

## Document History

**SENT**
**01 / 23 / 2026**
20:02:08 UTC
Sent for signature to Timothy S. Hoffman /dba/ Hoffman Tactical (tim@hoffmantactical.com) by services@clio.com acting on behalf of jblanchard@blanchard-patent.com
IP: 73.113.124.254

**VIEWED**
**01 / 23 / 2026**
20:13:48 UTC
Viewed by Timothy S. Hoffman /dba/ Hoffman Tactical (tim@hoffmantactical.com)
IP: 135.135.34.123

**SIGNED**
**01 / 23 / 2026**
20:21:23 UTC
Signed by Timothy S. Hoffman /dba/ Hoffman Tactical (tim@hoffmantactical.com)
IP: 135.135.34.123

**COMPLETED**
**01 / 23 / 2026**
20:21:23 UTC
The document has been completed.