# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| ABC IP, LLC, a Delaware limited liability company, and RARE BREED TRIGGERS, INC., a Texas corporation,<br><br>Plaintiffs,<br><br>v.<br><br>TIMOTHY HOFFMAN, an individual, and HOFFMAN TACTICAL, LLC, a Tennessee limited liability company,<br><br>Defendants. | Case No. 1:25-CV-00389-CLC-CHS<br><br>Hon. Curtis Collier |

## DEFENDANTS' BRIEF IN SUPPORT OF PARTIAL MOTION TO DISMISS

Defendants, Timothy Hoffman ("Mr. Hoffman") and Hoffman Tactical, LLC ("HT") (collectively, "Hoffman"), submit this brief in support of their Partial Motion to Dismiss as to Counts IV, V, VI, VII, VIII, IX, and X of Plaintiffs' Amended Complaint (Doc. 47).

## STANDARD OF REVIEW

Courts reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6) accept all well-pleaded factual allegations as true and construe the complaint in the light most favorable to the plaintiff. The complaint must contain sufficient facts, accepted as true, to state a claim for relief that is plausible on its face. In other words, the well-pleaded facts must permit the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Mattera v. Baffert*, 100 F.4th 734, 739 (6th Cir. 2024), *reh'g denied*, No. 23-5750, 2024 WL 3206004 (6th Cir. June 10, 2024). A complaint that sets forth only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *FedEx Ground Package Sys., Inc. v. Route Consultant, Inc.*, 97 F.4th 444, 452 (6th Cir. 2024)

1

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Bright v. Gallia Cnty., Ohio*, 753 F.3d 639, 652 (6th Cir. 2014) (quoting *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007)).

"When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). When exhibits containing statements made by a defendant are incorporated into the complaint, courts "treat the exhibit as an allegation that the [defendant] made the statements in the [exhibit] and [] treat that allegation as true." *Jones v. City of Cincinnati*, 521 F.3d 555, 561 (6th Cir. 2008). Further, a court may consider and rely upon videos referenced and relied upon within the complaint. *Bell v. Southfield*, 37 F.4th 362, 364 (6th Cir. 2022) ("[T]he plaintiff's complaint implicitly relies on the videos by recounting facts that could only be known to him by watching the videos."). In fact, the court may disregard allegations within the complaint at the motion to dismiss stage when "the videos are clear and 'blatantly contradict[]' or 'utterly discredit[]' the plaintiff's version of events." *Id.* at 364 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

## FACTUAL BACKGROUND

Ever since Congress passed the National Firearms Act in 1934, law abiding Americans have sought and developed new ways of increasing the firing rate of their semiautomatic firearms. In the ensuing decades, inventors have designed bump stocks, echo triggers, binary triggers, and, of course, forced reset triggers to meet this demand.

2

Forced reset triggers are nothing new. On March 1, 1934, Charles J. Michal patented a design that used the recoil of the firearm to activate a lever which would, in turn, force the trigger to reset and thus allow for faster firing. U.S. Patent No. 2,056,975 col. 1, ll. 1-10 (issued March 1, 1934). Thomas Allen Graves iterated on this design further by adapting the mechanism to a variety of different firearms, including, in 2014, the AR-15. Doc. 26, Decl. of Timothy Hoffman, Ex. 1, at ¶ 10.

Since 2014, despite the uncertain regulatory landscape, countless others, including Timothy Hoffman and Rare Breed Triggers, have further developed and produced variants of the "forced reset trigger" concept for the U.S. consumer firearms market. Id. at ¶¶ 13–15. However, because Rare Breed explicitly wishes to create a monopoly in this highly competitive market, Rare Breed has undertaken a strategy of using the judicial system to bully every other competitor out of the forced reset trigger market. For example, on information and belief, Rare Breed and/or its patent holding company, ABC IP, are currently parties to no less than eleven cases as Rare Breed seeks to create a monopoly in the forced reset trigger market. Rare Breed has done so on the basis of invalid, inapplicable, and/or expired patents.

Now, Rare Breed seeks to force Mr. Hoffman and HT out of the market. In addition to their claims for patent infringement, Rare Breed seeks to punish Hoffman for, among other things, (1) daring to disagree with Rare Breed that the Super Safety design does not infringe on Rare Breed's patents, and (2) freely publishing online the Super Safety designs so that everyone, including his competitors and the wider consumer base, can freely assert their Second Amendment Rights and compete in the new, burgeoning market for forced reset triggers.

3

## <u>ARGUMENT</u>

## I.     Plaintiffs' Claims Fail to State a Claim Upon Which Relief Can Be Granted

Plaintiffs' claims of unfair competition (Count IV), consumer protection (Count V), defamation (Count VI), and tortious interference (Count IX) rely on a series of videos and comments posted online by Hoffman. *See, e.g.*, Doc. 47, Am. Compl. at ¶ 58 ("Defendants have posted numerous online videos and comments relating to the purported noninfringement of the Infringing Devices, using factually and legally incorrect application of patent law to compare their accused product to the '247 Patent."). Generally speaking, Hoffman's online videos and comments are *informative* and set forth Hoffman's good faith belief that the Super Safety does not violate any of Plaintiffs' patents. Such statements simply cannot serve as a basis for tort liability. *See Kaplan v. Helenhart Novelty Corp.*, 182 F.2d 311, 314 (2d Cir. 1950) ("[I]t is not an actionable wrong for one in good faith to make plain to whomsoever he will that it is his purpose to insist upon what he believes to be his legal rights, even though he may misconceive what those rights are."). Even if Hoffman's good faith belief is ultimately found to be incorrect and the Super Safety at some future date is found to infringe at least one of Plaintiffs' patents, Plaintiffs' remedy rests with their *patent claims* (Counts I, II, III, and XIII) and Hoffman's conduct does not arise to the level of unfair competition, consumer protection violations, defamation, or tortious interference.

In addition to this overarching deficiency with the theory behind several of Plaintiffs' claims, each of Plaintiffs' Counts IV, V, VI, VII, VIII, IX, and X fail to state a claim upon which relief can be granted for the reasons more fully set forth below.

### a.     Count IV – Unfair Competition Under 15 U.S.C. § 1125 (Lanham Act § 43)

Plaintiffs' "false advertising" claim under the Lanham Act is riddled with vague and conclusory statements and, accordingly, fails to state a claim and must be dismissed. "To state a cause of action

4

for misleading advertisement under the Lanham Act, a plaintiff must establish the following: 1) the defendant has made false or misleading statements of fact concerning his own product or another's; 2) the statement actually or tends to deceive a substantial portion of the intended audience; 3) the statement is material in that it will likely influence the deceived consumer's purchasing decisions; 4) the advertisements were introduced into interstate commerce; and 5) there is some causal link between the challenged statements and harm to the plaintiff." *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 613 (6th Cir. 1999). In addition, as explained below, when the claim involves assertions related to patent validity, a plaintiff must also show the defendant acted in bad faith. *See, e.g. Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1353 (Fed. Cir. 1999).

### i. Plaintiffs Do Not Allege Any False or Misleading Statements of Fact

As an initial matter, the Amended Complaint fails to state a claim for unfair competition under the Lanham Act because it does not allege *what* "false or misleading statements of fact" Hoffman made regarding either party's products. The Sixth Circuit has clearly articulated the pleading standards for false advertising claims under the Lanham Act. In *FedEx Ground Package Sys., Inc. v. Route Consultant, Inc.*, the Circuit Court held:

> [A] complaint may not baldly assert that a challenged statement is false or misleading. It must explain *why* and *how* it is so. *See Wysong*, 889 F.3d at 271 (affirming dismissal because the complaint "did not explain *how* the photographs are supposed to have misled consumers in light of the whole context of the challenged advertisements"); *see also Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Azurity Pharms., Inc. v. Edge Pharma, LLC*, 45 F.4th 479, 498 (1st Cir. 2022) (affirming dismissal where the complaint "lack[ed] any specific explanation as to how" the pertinent statements "could mislead an audience"); *Int'l Code Council, Inc. v. UpCodes, Inc.*, 43 F.4th 46, 64 n.10 (2d Cir. 2022).

97 F.4th 444, 454 (6th Cir. 2024).

Plaintiffs' only attempts to plead allegations related to their false advertising claim, which themselves are vague and conclusory at best, are found in Paragraphs 58 and 59 of the Amended Complaint:

> 58. Defendants have posted numerous online videos and comments relating to the purported noninfringement of the Infringing Devices, using factually and legally incorrect application of patent law to compare their accused product to the '247 Patent.

> 59. Upon information and belief, Defendants have further supported, incited, and posted comments relating to Plaintiffs' '247 and '723 Patents and their applicability to their Infringing Device that were false. Such comments were published on YouTube, as well as on the http://hoffmantactical.com website: [YouTube video screen capture omitted].

Relying on these allegations, Plaintiffs clearly fail to meet the elementary pleading requirement of asserting enough facts supporting a plausible inference that Hoffman's statements (whatever those statements may be) meet each of the elements of a false advertising claim under the Lanham Act. Not only are the allegedly false or misleading statements not identified, but Plaintiffs have not alleged *any* facts supporting an inference that those statements deceive the intended audience, are likely to influence those consumers' purchasing decisions, or that there is a causal link between Hoffman's statements and Plaintiffs' alleged harm. As a result, Plaintiffs' Unfair Competition claim pursuant to 11 U.S.C. § 1125(a)(1) fails to state a claim upon which relief can be granted and must be dismissed.

### ii. Hoffman's Statements Are Not Commercial Advertising or Promotion

Even if the vague allegations within the Amended Complaint were sufficient to meet Plaintiffs' initial pleading burden, their claim nevertheless fails as a matter of law because Hoffman's statements made on YouTube and his website are not "commercial advertising or promotion" as required under the Lanham Act. The text of 15 U.S.C. § 1125(a)(1)(B) sets forth two "commerce" elements. First, the conduct giving rise to liability must be done "in commerce" within the ordinary understanding of the United States Constitution's Commerce Clause. *FedEx Ground Package Sys., Inc. v. Route Consultant, Inc.*, 661 F. Supp. 3d 765, 778 (M.D. Tenn. 2023), *aff'd*, 97 F.4th 444 (6th Cir. 2024). However, the

6

Lanham Act "also imposes a second, more stringent requirement—that the relevant statement be made… 'in commercial advertising or promotion.'" *Id*. The Sixth Circuit has adopted the following definition of "commercial advertising or promotion," which encompasses the Constitutional concept of "commercial speech" but also requires additional characteristics:

> (1) commercial speech; (2) for the purpose of influencing customers to buy the defendant's goods or services; (3) that is disseminated either widely enough to the relevant purchasing public to constitute advertising or promotion within that industry or to a substantial portion of the plaintiff's or defendant's existing customer or client base.

*Id.* at 779 (quoting *Grubbs v. Sheakley., Inc.*, 807 F.3d. 785, 801 (6th Cir. 2015)).

Within the Amended Complaint, Plaintiffs vaguely refer to Hoffman's YouTube videos and website. Specifically, Plaintiffs refer to an August 15, 2025 video posted by Hoffman where he "discusses [Plaintiffs' patent] claims in detail as they apply to [the Super Safety]." Am. Compl. ¶ 20. *See also* Am. Compl. ¶¶ 56, 58, 59, 100. However, a basic review of this video, along with others posted by Hoffman, clearly dispels of any notion that these videos—and Hoffman's statements within—are "for the purpose of influencing customers to buy [Hoffman's] goods or services" as required by the Sixth Circuit's definition of "commercial advertising or promotion." While Hoffman maintains that Plaintiffs are required to plead more than their general reference to "numerous online videos and comments" (Am. Compl. ¶ 58), as argued above, Plaintiffs' Unfair Competition claim nevertheless fails as Hoffman's comments are not commercial advertising or promotion.

### iii.    Plaintiffs Must Plead Facts Sufficient to Infer Bad Faith by Hoffman

Finally, Plaintiffs' Unfair Competition claim is fatally deficient as it fails to allege Hoffman acted in "bad faith" as required for representations related to alleged patent infringement (or, in this case, non-infringement). Federal courts, including this Court, as well as the U.S. Court of Appeals for the Federal Circuit, have consistently held that liability under § 43(a) of the Lanham Act, 15 U.S.C.

1125(a), can only arise when the plaintiff has made a showing that the defendant acted in bad faith. The Federal Circuit explained the rationale for this additional element applied in patent-related cases in *Zenith Elecs. Corp. v. Exzec, Inc.*:

> [B]efore a patentee may be held liable under § 43(a) for marketplace activity in support of its patent, and thus be deprived of the right to make statements about potential infringement of its patent, the marketplace activity must have been undertaken in bad faith. This prerequisite is a function of the interaction between the Lanham Act and patent law, and is in addition to the elements required by § 43(a) itself, as § 43(a) alone does not require bad faith[.]

182 F.3d 1340, 1353 (Fed. Cir. 1999). *See also Globetrotter Software, Inc. v. Elan Comput. Grp., Inc.*, 362 F.3d 1367, 1374 (Fed. Cir. 2004) ("[F]ederal patent law preempts state-law tort liability for a patentholder's good faith conduct in communications asserting infringement of its patent[.]") and *Roadtec, Inc. v. Rd. Sci., LLC,* No. 1:10-CV-338, 2013 WL 12123358 (E.D. Tenn. Aug. 29, 2013) (Bad faith required in Lanham Act § 43(a) claim brought against patent holder).

While the requirement of showing "bad faith" in § 43(a) claims related to statements regarding patent rights has ordinarily been applied in cases where the *patentholder* is publicly asserting *infringement*, the same principals underlying the bad faith requirement also apply to a *non-patentholder* alleging his product *does not infringe* existing patents—the situation presently before this Court. Just as patent holders must have a conditional privilege to announce their good faith beliefs regarding the enforceability of their patent, *non-patentholders* likewise must be able to challenge the scope of existing patents and publicly state their position that their products *do not infringe* existing patents, when those statements are made in good faith. *See Id.* at *5 (Recognizing competitors must be able to assert their rights "even though [they] may misconceive what those rights are."). Requiring a showing of bad faith in both circumstances reflects the understanding that "patent and antitrust laws are complementary in purpose in that they each promote innovation and competition" and that patentholders and non-patentholders alike "must be allowed to make [their] rights known…so that

8

[competitors] can determine whether to cease [their] allegedly infringing activities, negotiate a license if one is offered, or decide to run the risk of liability and/or the imposition of an injunction." *Zenith*, 182 F.3d at 1353.

Applying the pleading standard for "bad faith" to the Amended Complaint, it is clear Plaintiffs have failed to meet their initial burden as to this element. "A plaintiff fails to establish bad faith on the part of the defendant unless the plaintiff establishes 'the claims asserted were objectively baseless.'" *Roadtec, Inc. v. Rd. Sci., LLC*, 2013 WL 12123358, at *5 (citing *GP Indus., Inc. v. Eran Indus., Inc.*, 500 F.3d 1369, 1374 (Fed. Cir. 2007)). A claim is only objectively baseless if "no reasonable litigant could realistically expect success on the merits." *Id.* (quoting *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993)). Further, Plaintiffs must also show *subjective* bad faith; that is, that Hoffman *knew* his statements that his products do not infringe Plaintiffs' patents were baseless. *Id.* at *10. The Amended Complaint is simply void of any factual allegations that establish Hoffman's statements were objectively baseless *and* that he *knew* they were baseless, such that he acted in bad faith. Since Plaintiffs have failed to plead any facts supporting an inference that Hoffman's actions were taken in bad faith, Count IV of the Amended Complaint alleging Unfair Competition under the Lanham Act must be dismissed.

    **b.    Count V – Tennessee Consumer Protection Act, Tennessee Code Annotated Section 47-18-101, *et seq*.**

For reasons similar to those above related to Plaintiffs' Unfair Competition claim under the Lanham Act, Plaintiffs' state-law claim under the Tennessee Consumer Protection Act likewise must be dismissed. To state a claim under the Tennessee Consumer Protection Act (TCPA), a plaintiff must allege "(1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an 'ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated.'" *Williams v.*

9

*BMW of N. Am., LLC*, 514 F. Supp. 3d 1036, 1040-41 (E.D. Tenn. 2021). Additionally, as set forth in Section I.a.iii above, if the alleged deceptive acts or practices are based on marketplace representations of patent infringement (or noninfringement), the plaintiff must also allege that the defendant acted in "bad faith." *Globetrotter Software, Inc. v. Elan Comput. Group, Inc.*, 362 F.3d 1367,1374 (Fed. Cir. 2004) ("State-law claims such as [plaintiff's] can survive federal preemption only to the extent that those claims are based on a showing of 'bad faith' action in asserting infringement."). Furthermore, under Tennessee law, the plaintiff must plead TCPA claims with the particularity required of common-law fraud claims. *Westgate Resorts, Ltd. v. Wesley Fin. Grp., LLC*, No. 3:20-CV-00599, 2021 WL 794878, at *3 (M.D. Tenn. Mar. 2, 2021) ("[M]isrepresentation claims under the TCPA are generally subject to the 'particularity' requirement of Rule 9, which requires that a party asserting a fraud claim 'state with particularity the circumstances constituting fraud.'"; *see also Harvey v. Ford Motor Credit Co.*, 8 S.W.3d 273, 275–76 (Tenn. Ct. App. 1999) (Same, applying Tenn. R. Civ. P. 9.02, the state law equivalent of Fed. R. Civ. P. 9(b), to claims under the TCPA). The Amended Complaint clearly fails to meet each of these pleading standards.

First, Plaintiffs have not plead with the requisite particularity what conduct Hoffman has taken that amounts to an unfair or deceptive act or practice under the TCPA. Fed. R. Civ P. 9(b), as applied to claims under the TCPA, requires "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." In fact, Paragraph 108 of the Amended Complaint merely quotes several sections of the statute—without articulating *what* conduct by Hoffman violates the TCPA or *how* it does so. As such, the Amended Complaint fails to sufficiently plead the first element of a TCPA claim.

Further, Plaintiffs' only allegation touching on the second element under the TCPA— damages—is found in Paragraph 109 of the Amended Complaint: "As a result of Defendants' actions

10

described herein, Plaintiffs have suffered an ascertainable loss of money, time, and/or value, entitling Plaintiffs to actual damages under Tennessee Code Annotated section 47-18-109(a)(1)." This allegation amounts to nothing more than the "threadbare recitals of the elements" federal courts have uniformly rejected at the motion to dismiss state. *See, e.g. FedEx Ground Package Sys., Inc. v. Route Consultant, Inc.*, 97 F.4th 444, 454 (6th Cir. 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937(2009)). Again, Plaintiffs have failed to meet their pleading burden.

Finally, even if Plaintiffs' barebones allegations could be said to meet the pleading standards related to the first two elements of a TCPA claim, it nevertheless fails to allege Hoffman acted in "bad faith" as required for state-law tort claims in patent-related cases to avoid preemption by federal patent law. The analysis of Plaintiffs' deficiencies on this issue, as applied to Plaintiffs' claim under the Lanham Act discussed above, apply equally to their state-law claim under the TCPA.

Hoffman's alleged "false" or "deceptive" statements under Plaintiffs' TCPA claim are the same statements Plaintiffs rely on related to their claims of Unfair Competition (Count IV) and Defamation (Count VI). The Amended Complaint lacks *any* allegation that could support an inference that Hoffman's statements of non-infringement of Plaintiffs' patents were objectively baseless and that he knew those statements were baseless. For these reasons, Plaintiffs' state-law claim under the Tennessee Consumer Protection Act must be dismissed.

### c.   Count VI – Defamation

Plaintiffs' extraordinary attempt to expand defamation liability to Hoffman's good faith interpretation of patent law and its application to the Super Safety, whether or not he is ultimately correct, must be rejected and this claim should be dismissed. While Hoffman maintains that he has not committed any sort of patent infringement, even if he may ultimately be found to be incorrect, Plaintiffs' remedies rest within their patent infringement claims—not one for defamation.

11

A plaintiff asserting a defamation claim must show that: "(1) a party published a statement; (2) with knowledge that the statement is false and defaming to the other; or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." *Whiting v. City of Athens*, 699 F. Supp. 3d 652, 663-64 (E.D. Tenn. 2023). Whether a statement "has the capacity to be understood as defamatory" is a question of law. *Id.* at 664. In making this determination, courts "must look to the words themselves and are not bound by the plaintiff's interpretation of them." *Brown v. Mapco Exp., Inc.*, 393 S.W.3d 696, 709 (Tenn. Ct. App. 2012) (quoting *Stones River Motors, Inc. v. Mid-S. Pub. Co.*, 651 S.W.2d 713, 719 (Tenn. Ct. App. 1983), *abrogated on other grounds*). Further, "[r]ather than merely cause annoyance, offense, or embarrassment, defamatory remarks must be reasonably construable as holding the plaintiff up to public hatred, contempt, or ridicule. They must carry with them an element of disgrace." *Whiting v. City of Athens*, 699 F.Supp.3d 652, 664 (E.D. Tenn. 2023) (citing *McWhorter v. Barre*, 132 S.W.3d 354, 364 (Tenn. Ct. App. 2003)).

Hoffmans' statements, whether or not false, are not defamatory as a matter of law. Plaintiffs allege "Defendants published false statements regarding the infringement and validity of the [Super Safety], both on YouTube and http://hoffmantactical.com." Am. Compl. ¶ 113. In sum, those statements amount to Hoffman's good faith belief that the Super Safety does not infringe any of Plaintiffs' patents. *See, e.g.*, Am. Compl. ¶ 58 ("Defendants have posted numerous online videos and comments relating to the purported noninfringement of the [Super Safety], using factually and legally incorrect application of patent law to compare their accused product to the '247 Patent."). Even if Hoffman is at some point in the future determined to be incorrect, it is not defamation to simply state that you are not violating the law—even if that ultimately turns out to be false. The case of *CMI, Inc. v. Intoximeters, Inc.* is instructive:

> [D]epending on how a statement is made, a charge of patent infringement would not hold a company to hatred, ridicule, or disgrace. Among business people, patents are

known to be complicated and in infringement issues even more so. The statement by one party that another is infringing does not carry an intrinsic moral or business turpitude. For instance, it is not the same as calling one a liar, bankrupt or untrustworthy. . . . The Court cannot say that simply stating that a corporation violates a legal patent will constitute defamation *per se*.

918 F. Supp. 1068, 1084 (W.D. Ky. 1995).

Surely, the inverse situation—where an individual claims his *own* conduct does *not* violate a patent—is deserving of even greater protection. *See also White Mule Co. v. ATC Leasing Co. LLC*, 540 F. Supp. 2d 869, 898 n.20 (N.D. Ohio 2008) ("In the proper situation, a factual statement that one party is infringing a patent could be libelous. A statement reflecting one's opinion on the issue (not to mention a statement reflecting one's opinion on the strength of a case deciding the issue) is not such a situation."). Plaintiffs' wildly broad application of defamation law would open the doors for *any* legal dispute to tack on a claim for defamation. Is someone liable for defamation if they publicly claim they did not breach a contract, even if they are later found liable for breach? Clearly not. Plaintiffs' remedy rests within their patent infringement claims, *not* a claim for defamation.

Even if Plaintiffs' theory of liability could be applied here, it is not enough for the statement to be false. Plaintiffs must also show that the statement *defamed* them—in other words, that Hoffman's statements resulted in an injury to Plaintiffs' character and reputation. *See, e.g.*, *Hunt v. S. Baptist Convention*, 777 F. Supp. 3d 776, 827 (M.D. Tenn. 2025) ("[T]he basis for an action for defamation…is that the defamation has resulted in an injury to the person's character and reputation."). The Amended Complaint falls short of alleging any nonconclusory facts showing Plaintiffs have suffered injury to their character and reputation. *See* Am. Compl. ¶ 116 ("Plaintiffs have suffered actual damages in the form of injury to Plaintiffs' character and reputation, and that such injury has cased [sic] harm to Plaintiffs' reputation and standing in the community."). Without more, this Court need not—and

13

cannot—*presume* Plaintiffs have been damaged. Dismissal of Plaintiffs' defamation claim is appropriate for each and every of the foregoing reasons.

### d. Count VII – Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiffs fail to state a claim for breach of contract and breach of the implied covenant of good faith and fair dealing because they do not allege any facts showing that Hoffman provided 3D CAD files that induce others to make or have made parts that infringe the '223 Patent—the only conduct Plaintiffs allege Hoffman engaged in amounting to a breach of the Agreement (defined *infra*).

"[A] duty of good faith and fair dealing is implied in the performance and enforcement of every contract." *Kinard v. Nationstar Mortgage,* LLC, 572 S.W.3d 197, 207 (Tenn. Ct. App. 2018). The purpose of this duty is to honor "the reasonable expectations" of the parties and to protect their right "to receive the benefits of an agreement into which they entered." *Id.* at 208. However, the "duty of good faith does not extend beyond the agreed upon terms of the contract and the reasonable contractual expectations of the parties." *Wallace v. National Bank of Commerce*, 938 S.W.2d 684, 687 (Tenn. 1996). Plaintiffs may not use this duty to "create new contractual rights, nor can it be used to circumvent the specific terms of the parties' agreement." *Kinard*, 572 S.W.3d at 208 (citing *Lamar Advertising Co. v. By-Pass Partners*, 313 S.W.3d 779, 791 (Tenn. Ct. App. 2009)).

Plaintiffs allege that Hoffman breached the February 24, 2022 settlement agreement (the "Agreement") by posting a video on YouTube on March 6, 2022, which is expressly incorporated into the Amended Complaint. Am. Compl., ¶ 27. Plaintiffs claim two statements made by Hoffman in that video amount to a breach of the Agreement and Hoffman's implicit duty of good faith and fair dealing:

> I took the files down. If someone wants the files, they're really easy to find anywhere on the web, on the Internet right now with a little bit of poking around you can still find all the original files. You can find people have modified them. So, easy to find the files, the community still has the designs."

14

Am. Compl. ¶ 27 (https://www.youtube.com/watch?v=NxSFNreG_Ec at 11:15 – 11:30)

> And then as to the actual files themselves, the files are still available if somebody wanted them. I'm not providing the files anymore, I'm not working on that particular technology anymore. However, um, if someone was looking for the files, they're still available. So, really, nothing has changed after this whole situation. We've all kind of wasted a little bit of time on it, but that's about it and, um, I think we're kind of back to where we were before."

Am. Compl. ¶ 27 (https://www.youtube.com/watch?v=NxSFNreG_Ec at 14:54 – 15:15)

> Plaintiffs allege these two statements violate Paragraph 1 of the Agreement:

> Hoffman agrees not to make, have made, offer for sale, or sell any product or device that directly or indirectly infringes any claim of the '223 Patent or to make, release, distribute, or provide any 3D CAD file that induces others to make or have made parts that directly or indirectly infringe any claim of the '223 Patent."

Am. Compl., Ex. D at ¶ 1.

However, clearly *verbal statements* do not amount to the affirmative *action* of making, distributing, or providing 3D CAD files. Making a statement that files exist—in someone else's possession—falls woefully short of the actions prohibited under the Agreement, especially given Hoffman gives no indication as to where the files may be. And Hoffman certainly does not "instruct their viewers to search out the infringing files" as Plaintiffs incorrectly allege. Am. Compl. ¶ 28.

What is more problematic, and one of many fatal flaws in Plaintiffs' contract claim, is that Plaintiffs *acknowledge* it was foreseeable allegedly infringing files would still be accessible on the internet. Hoffman cannot breach the Agreement, nor his duty of good faith and fair dealing, by making a truthful statement regarding a fact that was foreseeable for Hoffman and Plaintiffs alike at the time of the Agreement. Am. Compl. ¶ 119. Hoffman simply acknowledged what both parties foresaw—that previously disseminated files would remain accessible online.

Further, in addition to affirmative conduct by Hoffman (which Plaintiffs have not alleged), an essential element of any breach of Paragraph 1 of the Agreement is that the files at issue "directly or

15

indirectly infringe any claim of the '223 Patent." Am. Compl., Ex. D. at ¶ 1. Nowhere within the Amended Complaint do Plaintiffs allege the contents of the files Hoffman refers to in the March 6, 2022 YouTube video. Nor do they allege *how* said files infringe any claim of the '223 Patent. In fact, the '223 Patent is nowhere to be found within the Amended Complaint. *See* Am. Compl. ¶ 23 ("Plaintiffs have not asserted U.S. Patent No. 10,514,223 (the "'223 Patent") in this action[.]"). If there is no infringement, there is no breach.

Finally, and relatedly, Plaintiffs have not alleged damages in any non-conclusory fashion. Paragraph 121 of the Amended Complaint claims "Plaintiffs have suffered actual damages in the form of continued infringement of the '223 Patent based on the files that are still "available," which the public is aware of because of Defendants' conduct. Infringement (which Plaintiffs have not sufficiently alleged) itself does not amount to damages. Plaintiffs must allege *how* they have suffered damages. They have not. For these reasons, Plaintiffs' breach of contract and breach of good faith and fair dealing claim must be dismissed.

e.      **Count VIII – Violation of the Sherman Act § 1**

Plaintiffs fail to state a claim for violation of §1 of the Sherman Act because the conduct Plaintiffs allege, that third parties downloaded Hoffman's 3D CAD files, is neither direct nor circumstantial evidence of a contract, combination, or conspiracy. To establish a violation of § 1 of the Sherman Act, a plaintiff must sufficiently allege "1) a contract, combination, or conspiracy; 2) affecting interstate commerce; 3) which imposes an 'unreasonable restraint on trade.'" *White and White, Inc. v. American Hosp. Supply Corp.*, 723 F.2d 495, 504 (6th Cir. 1983). Plaintiffs failed to allege facts sufficient to establish a contract, combination, or conspiracy necessitating the dismissal of this claim.

To satisfy the first element, the plaintiff must allege "either an explicit agreement to restrain trade or sufficient circumstantial evidence tending to exclude the possibility of independent conduct."

16

*Hobart-Mayfield, Inc. v. Nat'l Operating Comm. on Standards for Athletic Equip.*, 48 F.4th 656, 664 (6th Cir. 2022). Furthermore, because antitrust conspiracy claims are uniquely susceptible to abuse, courts should err toward dismissal at the pleading stage if a complaint fails to allege facts that 'plausibly suggest' (and are not merely consistent with) an agreement to unlawfully restrain trade. *Id.; See also, Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557–59 (2007).

### i.  Plaintiffs Fail to Allege Any Explicit Agreement That Restrains Trade

Plaintiffs have not alleged the existence of an explicit agreement to unlawfully restrain trade. For a plaintiff to sufficiently allege an explicit agreement, they must allege "direct evidence [that] is 'tantamount to an acknowledgment of guilt.'" *Hyland v. HomeServices of America*, 771 F.3d 310, 318 (6th Cir. 2014). In establishing an explicit agreement, a plaintiff cannot rely on "inferences to establish the proposition or conclusion being asserted." *Id.*

Plaintiffs allege that every person who downloaded 3D CAD and/or STEP files from Hoffman entered into a contract, combination, and/or conspiracy with Hoffman by virtue of that download alone. Am. Compl. ¶ 126. This allegation fails as a matter of law. Courts have only ever recognized that downloading a file may, under certain narrow and specific circumstances, even constitute *assent* to an agreement. *See Specht v. Netscape Communications Corp.*, 150 Supp.2d 585, 591–95 (S.D.N.Y. 2001); *see also In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873 (6th Cir. 2021). It appears no court has ever gone so far as to hold that downloading a file constitutes an agreement in its entirety. How could it? A manifestation of assent, without more, cannot evidence the specific terms and obligations necessary to create a legally cognizable agreement. If downloading a file cannot, by itself, constitute an agreement, it plainly cannot serve as evidence of the sort of explicit, guilt-acknowledging agreement that § 1 of the Sherman Act demands. Plaintiffs' explicit-agreement theory therefore fails as a matter of law.

17

### ii. Plaintiffs Fail to Allege Any Parallel Conduct

Plaintiffs' claim fares no better under a circumstantial evidence theory. To establish a conspiracy through circumstantial evidence, a plaintiff must allege facts demonstrating both parallel conduct among the alleged conspirators and "plus factors" that tend to exclude the possibility that the defendants were acting independently. *Twombly*, 550 U.S. at 554; *Hyland, Inc.*, 771 F.3d at 319–20. Critically, "circumstantial evidence alone cannot support a finding of conspiracy when the evidence is equally consistent with independent conduct." *Id.* at 320 (quoting *Re/Max Int'l v. Realty One, Inc.*, 173 F.3d 995, 1009 (6th Cir. 1999)).

The conduct at the heart of Plaintiffs' conspiracy theory is this: an unspecified number of unidentified entities — drawn from across the global supply chain — each independently downloaded free digital files from Hoffman's platform so that each could, on their own, manufacture and/or sell a lower-cost alternative to Plaintiffs' devices. That description does not depict a conspiracy. It depicts independent market actors, each pursuing their own individual economic interests, each making the entirely rational and self-interested decision to access freely available design files to make a wholly different product with fewer parts and thus a significantly lower production cost allowing them to compete more effectively on price while potentially maintaining superior margins. This is the very essence of independent conduct—and it is the very conduct antitrust law is designed to encourage, not condemn. Therefore, because Plaintiffs cannot establish the existence of a contract, combination, or conspiracy between Hoffman and any other person or entity, Plaintiffs' claim for violation of § 1 of the Sherman Act must be dismissed.

### f. Count IX – Violation of the Sherman Act § 2

Plaintiffs' attempted monopolization claim under § 2 of the Sherman Act is equally deficient. As a preliminary matter, it appears that Plaintiffs attempt to sustain their § 2 claim under two theories:

18

(1) conspiring to monopolize, and (2) attempting to monopolize. Because Plaintiffs' claim for conspiring to monopolize is deficient for precisely the reasons set out in the previous section and could be dismissed on that basis alone, this section will focus on why Plaintiffs have failed to sufficiently allege a claim for attempted monopolization.

Plaintiffs failed to sufficiently allege a claim for attempted monopolization because the conduct Plaintiffs mischaracterize as anticompetitive is, on its face, the opposite. Hoffman's alleged conduct is fundamentally procompetitive as providing free, open-source 3D CAD files reduced the barrier to entry, increased the number of market participants in the forced reset trigger market, and he believed he was relinquishing his ability to ever establish monopoly power in said market. To plead a claim of attempted monopolization under § 2 of the Sherman Act, a plaintiff must establish (1) the defendant engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power. *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993). Each element is essential, and a failure to adequately plead any one of them is fatal to the claim. Here, Plaintiffs cannot satisfy any element.

Predatory or anticompetitive conduct, within the meaning of § 2, is conduct that is "designed to destroy competition, not just to eliminate a competitor. Lively legal competition will result in the efficient and shrewd businessman routing the inefficient and imprudent from the field." *Richter Concrete Corp. v. Hilltop Concrete Corp.*, 691 F.2d 818, 823 (6th Cir. 1982). The distinction is fundamental: antitrust law protects the competitive process itself — not individual competitors who find themselves disadvantaged by it.

Plaintiffs' own allegations defeat this element. By their account, Hoffman made 3D CAD design files freely and publicly available, enabling third parties across the marketplace to manufacture and/or sell lower-cost alternatives to Plaintiffs' products. Am. Compl. ¶¶ 32, 49, 63. Far from

19

destroying competition, this conduct introduced competition into a market where Plaintiffs, by their own admission, believe they are entitled to hold a monopoly. Am. Compl. ¶¶ 34, 137. The only harm that Plaintiffs *factually* allege is that less people have purchased Plaintiffs' products. Am. Compl. at ¶ 138. That "harm" is not cognizable under our nation's antitrust laws. *See CBC Companies, Inc. v. Equifax, Inc.*, 561 F.3d 569, 571–72 (6th Cir. 2009). That "harm" is not the result of predation nor of anticompetitive conduct. That "harm" is the result of the competitive process working as intended.

Plaintiffs cannot satisfy the second or third elements either. Hoffman's decision to freely release the files in question directly undermines any claim of specific intent that the Plaintiffs seek to establish, as by doing so, Hoffman believed he was forever foreclosing his ability to achieve monopoly power. As discussed previously, even if Hoffman were to remove or restrict access to any 3D CAD files that he previously published, those same files can and will remain forever accessible and usable by those independent manufacturers and consumers who wish to produce fire selectors based on Hoffman's Super Safety design. Therefore, because Plaintiffs fail to establish any of the necessary elements, the Court should dismiss the Plaintiffs' claim under § 2 of the Sherman Act.

### g. Count X – Tortious Interference with Business Relationships

To succeed on a tortious interference with business relationships claim, the plaintiff must establish: "(1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means; and (5) damages resulting from the tortious interference." *F.S. Sperry Co. v. Schopmann*, 304 F. Supp. 3d 694, 705 (E.D. Tenn. 2018). Plaintiffs' Amended Complaint fails to allege

20

facts sufficient to meet each of these five elements and, accordingly, fails as a matter of law and must be dismissed.

Plaintiffs have failed to clearly identify an existing relationship with *specific* third parties or a prospective relationship with an *identifiable* class of third persons and, therefore, their tortious interference claim fails to state a claim. "Generalized references to third parties simply fails to meet the specificity needed for this element." *Gold Sci. Consultants, Inc. v. Cheng*, No. 3:07-CV-152, 2009 WL 1256664, at *10 (E.D. Tenn. May 4, 2009); *see also Overnite Transp. Co. v. Teamsters Loc. Union No. 480*, No. M2002-02116-COA-R3CV, 2004 WL 383313, at *13 (Tenn. Ct. App. Feb. 27, 2004), *aff'd*, 172 S.W.3d 507 (Tenn. 2005) (granting motion to dismiss tortious interference claim finding, in part, general allegations of business relationships insufficient) and *United Biologics, LLC v. Amerigroup Tennessee, Inc.*, No. 3:19-CV-180, 2024 WL 770640, at *16 (E.D. Tenn. Jan. 18, 2024), *aff'd sub nom. Acad. of Allergy & Asthma in Primary Care v. Amerigroup Tennessee, Inc.*, 155 F.4th 795 (6th Cir. 2025) ("Courts in Tennessee, however, have found that simply identifying a general class of third parties is not sufficient…").

Plaintiffs claim the class of third persons they have an existing and prospective business relationships with is "the prospective consumer market for forced reset trigger devices." Am. Compl. ¶ 142. Clearly the general prospective consumer base for a product cannot serve as the underlying "business relationship" for a successful tortious interference claim. If that were the case, any sort of competition would effectively give rise to a tortious interference claim.

Further, Plaintiffs have failed to allege facts showing Hoffman's "knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general[.]" The only allegation of "knowledge" related to this claim is that Hoffman "had or have knowledge of Plaintiffs' prospective relationships *with the consumer market for forced reset trigger devices*." Am.

21

Compl. ¶ 143. This is the epitome of the inadequate "mere awareness of the plaintiff's business dealings with others in general" rejected by courts in Tennessee. *See Gold Sci. Consultants, Inc. v. Cheng*, 2009 WL 1256664, at * 10 (Finding no evidence of defendant's knowledge of alleged business relationship other than with others in general). Having failed to allege facts sufficient to state a claim for tortious interference with business relationships, plaintiffs claim must be dismissed.

## CONCLUSION

For the reasons set forth above, this Court should dismiss Counts IV, V, VI, VII, VIII, IX, and X of the Amended Complaint with prejudice.

Respectfully submitted this 2nd day of March, 2026.


/s/Jacob G. Horton
Jonathan M. Blanchard (TN BPR #034,663)
(admitted *pro hac vice*)
Jacob G. Horton (TN BPR # 025,467)
Blanchard Horton PLLC
PO Box 5657
Oak Ridge, Tennessee 37830
(865) 269-2673
JBlanchard@blanchard-patent.com
JHorton@blanchard-patent.com
***Counsel for Defendants***

22

**CERTIFICATE OF SERVICE**

     I hereby certify that on March 2, 2026, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by U.S. Mail.  Parties may access this filing through the Court's electronic filing system.

                /s/Jacob G. Horton