IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

ABC IP, LLC, a Delaware limited liability company, and RARE BREED TRIGGERS, INC., a Texas corporation,

    Plaintiffs,

vs.

TIMOTHY HOFFMAN, an individual, and HOFFMAN TACTICAL LLC, a Tennessee limited liability company,

    Defendants.

Case No.: 1:25-cv-00389-CLC-CHS

**PLAINTIFFS' MOTION AND BRIEF FOR ORDER TO SHOW CAUSE WHY AS DESIGNS, LLC SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATING PRELIMINARY INJUNCTION (DOC. 46)**

This is an action for patent infringement in which ABC IP, LLC ("ABC") and Rare Breed Triggers, Inc. ("Rare Breed") (collectively, "Plaintiffs") accuse HOFFMAN TACTICAL LLC ("HT") and TIMOTHY HOFFMAN ("Hoffman") (collectively, "Defendants"), of infringing U.S. Patent No. 12,038,247 ("the '247 Patent"), U.S. Patent No. 12,031,784 ("the '784 Patent"), U.S. Patent No. 7,398,723 ("the '723 Patent") and U.S. Patent No. 12,529,538 ("the '538 Patent"). Plaintiffs filed an application for a Temporary Restraining Order, which was granted, and a Motion for Preliminary Injunction, which was granted by Preliminary Injunction (Doc. 46), with the injunctive relief set forth therein. The Court issued a Memorandum opinion explaining the basis for the injunctive relief. (Doc. 45).

    **A. Background**

The Preliminary Injunction expressly reaches not only Defendants, but also "all others acting in active concert therewith…." (Doc. 46 at 1). Upon investigation, Plaintiffs have

discovered a number of persons or entities—many of whom were identified by Hoffman himself—as entities who make, use, sell, and offer to sell infringing devices expressly based on the infringing design Hoffman published and who are therefore participating in "active concert" with Defendants in the patent infringement which was proscribed in the Preliminary Injunction. Plaintiffs have given written notice of the Preliminary Injunction (with copy thereof and the Memorandum provided) to various of those parties and/or the counsel representing them in other litigation between Plaintiffs and such third parties, requesting that such third parties honor this Court's order and cease and desist from continuing in the patent infringement proscribed in the Preliminary Injunction "in active concert" with Defendants. Declaration of Decker A. Cammack ("Cammack Decl."), ¶4, attached as Exhibit A.[1]

However, various third parties have failed to cease and desist—and, indeed, have expressly refused to do so.

At the Preliminary Injunction Hearing, Mr. Hoffman testified that he has had contact with several of these third parties. *See* Preliminary Injunction Transcript ("PI Trans."), Vol. II, 137-140. One of the companies known to him to make products "in accord with or based on" the Super Safety ("SS") design he released is AS Designs. On AS Designs' website listing for the Super Safety it states: "All SS products are made following the Hoffman Tactical design and specs." Cammack Decl., ¶6.

---

[1] The Cammack Declaration includes as exhibits 1 through 3 thereto, respectively (1) a notice letter transmitted to AS Designs, LLC ("AS Designs") by Decker Cammack ("ASD Notice Letter"), (2) a response thereto from counsel for AS Designs, John Skeriotis ("ASD Response"), and (3) the Declaration of Lawrence DeMonico ("DeMonico Decl."), including the August 9, 2025 Cease-and-desist letter to AS Designs, attached as exhibit 3-1.

AS Designs, Matthew Karlovic, and Calvin Olson (collectively "ASD") are among those who have received such notice but continue engaging in violative behavior.[2] On February 12, 2026, Plaintiffs sent Mr. Skeriotis a letter titled "Notice of Entry of Preliminary Injunction in Case No. 1:25-cv-0389-CLC-CHS." Cammack Decl., ¶4 (Ex. 1, ASD Notice Letter). In that letter, Plaintiffs stated their intention to seek relief from this Court if ASD did not agree to "refrain from selling the products described in the Preliminary Injunction." *Id.*, Ex. 1, p. 2.

On February 23, 2026, Mr. Skeriotis responded to the letter on behalf of his client ASD. *Id.*, Ex. 2 (ASD Resp.). In that letter, Mr. Skeriotis states "we do not agree that any of my clients are presently bound by the Hoffman PI and will not provide the admissions or assurances you demand on your proposed timetable." *Id.*, Ex. 2, p. 2 (last sentence). Such behavior and utter disregard of the Preliminary Injunction after actual notice constitutes contemptuous disregard of the Court and its order.

Therefore, Plaintiffs ask the Court to enter an Order to Show Cause against ASD, to be personally served on them through Mr. Skeriotis, compelling them to appear before the Court to explain why ASD should not be held in contempt of court for such violation.

### A. The Infringing Devices

ASD makes, sells, and offers for sale the infringing Super Safety expressly using the design published by Defendant Hoffman and Hoffman Tactical, as well as a device called the ARC Fire, both shown below, that operate in a similarly infringing fashion. The ASD Super Safety is an exact copy of the infringing Hoffman Super Safety (the ASD Super Safety even has "HT" on the cam) (Cammack Decl. ¶7 (picture showing HT on the ASD super safety), and as Mr. Hoffman testified,

---

[2] Plaintiffs have a pending lawsuit against ASD in the Middle District of North Carolina captioned *ABC IP, LLC, et al. v. AS Designs, LLC, Matthew Karlovic, and Calvin Olson*, Case No. 25-cv-01192, Middle District of North Carolina.

the ARC Fire is clearly based on Hoffman's infringing Super Safety Design (PI Tr., Vol. II, 137:23-138:3):





Cammack Decl., ¶8.

All of the products ASD currently sells are based on either (1) the original infringing Super Safety or (2) ASD's modification of the Super Safety design, which they call the "active reset clutch," or "ARC-Fire" device, which is essentially a Super Safety modified to operate in a similar fashion to the standard AR15 safety selector. In fact, ASD makes, sells, and offers for sale infringing devices designed for use in at least the following firearms: AR15, AR10, Heckler and Koch MP5 (and clones), Heckler and Koch MR556 and MR762, Palmetto State Armory JAKL, and Sig Sauer MPX/MCX. Cammack Decl., ¶9. Defendant Hoffman has further stated in his declaration and confirmed via testimony that ASD makes "components *in accord with or based on my* new design for a safety-selector-modified repeat reset trigger system." *See* Declaration of Timothy Hoffman in Support of Defendant's Response to Plaintiff's Motion for Preliminary Injunction ("Hoffman Decl."), Doc. 26-1, ¶15; PI Tr., Vol. II, 133:18-25.

### B. The Court's Jurisdiction

This Court has *in personam* jurisdiction over ASD for multiple reasons. ASD has purposely availed itself of the laws of Tennessee and this District by herein conducting business in furtherance of the sale of the infringing ASD Super Safety and ARC Fire devices. Additionally, ASD and its representatives have exhibited the infringing Super Safety and ARC-Fire device at least at one industry event in Knoxville, Tennessee within the last year. DeMonico Decl., ¶5, There, Mr. DeMonico, with Plaintiffs' counsel present, hand delivered a cease-and-desist letter to Defendant Karlovic of ASD. *Id.*, ¶6, Ex. 3-1. Finally, an agent of the undersigned has purchased both the Super Safety and ARC Fire devices via the internet and shipped to Chattanooga, Tennessee. Cammack Decl., ¶12.

"Determining whether specific personal jurisdiction over a nonresident . . . is proper entails

two inquiries: (1) whether a forum state's long-arm statute permits service of process and (2) whether the assertion of jurisdiction would be inconsistent with due process under the United States Constitution." *HTC Swed. AB v. Innovatech Prods. & Equip. Co.* No. 3:07-CV-232, 2010 WL 2163129, at *2, (E.D. Tenn. Feb. 25, 2010) (Shirley, J.). Tennessee's long-arm statute permits service of process to the limits of the due process clauses of the United States and Tennessee Constitutions, *see* Tenn. Code Ann. § 20-2-214, so the only inquiry is whether subjecting ASD to the jurisdiction of this Court is appropriate based on due process.

ASD is subject to specific jurisdiction based on its specific sales to customers in Tennessee and this District, as well as attending and promoting its infringing products in Knoxville, Tennessee in August 2025. ASD is also subject to specific personal jurisdiction[3] based on its operation of its website at www.activesafetydesigns.com and which exists for the specific purpose of selling and supporting its sale of infringing Super Safety and ARC Fire devices to residents of Tennessee and every state other than California, Colorado, Connecticut, Delaware, Florida, Hawaii, Illinois, Massachusetts, Maryland, Minnesota, New Jersey, Nevada, New York, Oregon, and Rhode Island. *See* AS Designs, "General FAQ," *available at* www.activesafetydesigns.com/support/solutions/articles/158000420538-general-faq (last visited Mar. 1, 2026). As stated above, Plaintiffs' agents were able to purchase both Super Safety and ARC Fire devices *directly* from ASD through its website, and had those infringing products delivered directly to Chattanooga, Tennessee. *See, e.g., Key Components, Inc. v. Braille, LLC*, No. 3:09-CV-322, 2010 WL 2506670, at *4 (E.D. Tenn. June 16, 2010) (holding that, where a

---

[3] Because of ASD's specific acts related to the subject matter of the instant motion, Plaintiffs need not establish that whether itis subject to general personal jurisdiction in this Court based on "'continuous and systematic'" contacts with Tennessee. *Conn v. Zakharov*, 667 F.3d 705, 713 (6th Cir. 2012) (quoting *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 415 (1984)).

defendant maintained an interactive website accessible in Tennessee and "continue[d] to stand ready to do business with customers in Tennessee," even a "small number of sales" to Tennessee residents was sufficient to establish specific in personam jurisdiction over that defendant); *Trintec Indus. V. Pedre Promotional Prods.*, 395 F.3d 1275, 1281 (Fed. Cir. 2005) (addressing the differences in highly interactive websites and passive websites for the purpose of analyzing personal jurisdiction).

Thus, (i) ASD maintains an interactive website accessible to Tennessee citizens and has made "other, purposeful and significant contacts" in Tennessee (and this District) by, at a minimum, attending industry events in this District and selling its products to customers herein, *Concord Music Grp., Inc. v. Anthropic PBC*, 738 F. Supp. 3d 973, 989 (M.D. Tenn. 2024); (ii) ASD has thereby "'purposefully directed' [its] activities at residents of the forum"; and (iii) and this litigation "results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quoting *Keaton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984) and *Helicopteros*, 466 U.S. at 414)). Accordingly, the "'fair warning'" requirement specified in *Burger King* and its progeny applies, and ASD is subject to the specific in personam jurisdiction of this Court in connection with the instant motion. *Burger King*, 471 U.S. at 472.

### C. Argument and Authorities

#### 1. The Standard for a Finding of Contempt for Violating an Injunction

There is no question that a person who takes actions violating a Preliminary Injunction in active concert with the named enjoined party can be held in contempt for such violations under Rule 65(d) of the Federal Rules of Civil Procedure.

In *Additive Controls & Measurement Sys. v. Flowdata, Inc.*, (having previously addressed

the basic rules that govern the enjoining of non-parties in the first instance), the Federal Circuit addressed the basic rules that govern when non-parties may be held in contempt of an injunction, writing as follows:

> As a general matter, a court may not enjoin a non-party that has not appeared before it to have its rights legally adjudicated. Non-parties may be held in contempt, however, if they "either abet the defendant, or [are] legally identified with him." That common-law principle is reflected in the text of Rule 65(d), Fed. R. Civ. Proc., which states that an injunction is binding on parties and "their officers, agents, servants, employees, and attorneys, and upon those persons in active concert and participation with them who receive actual notice of the order by personal service or otherwise."

154 F.3d 1345, 1351 (Fed. Cir. 1998) (internal citations omitted). The court noted the Supreme Court's statement that, "the effect of an injunction on non-parties 'depends on an appraisal of [their] relations and behavior [with the enjoined party] and not upon mere construction of terms of the order.'" *Id.* (quoting *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 15 (1945).

In *Aevoe Corp. v. AE Tech Co*. (an action in which, after entry of an injunction against the principal defendant, the plaintiff added that defendant's distributors as party-defendants for violating that injunction in active concert with the principal defendant), the Federal Circuit further explained:

> "Active concert or participation" has been interpreted to include both aiders and abettors of, and privies of, an enjoined party. *See Golden State Bottling Co., v. NLRB*, 414 U.S. 168, 179-80, 94 S. Ct. 414, 38 L. Ed. 2d 388 (1973) (citing *Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 14, 65 S. Ct. 478, 89 L. Ed. 661 (1930)); *Additive Controls*, 96 F.3d at 1395; *Rockwell Graphic Sys. v. DEV Indus.*, 91 F.3d 914, 919-20 (7th Cir. 1996). Such interpretations of "active concert or participation" recognize "that the objectives of an injunction may be thwarted by the conduct of parties not specifically named in its text." *Rockwell Graphic*, 91 F.3d at 920.

727 F.3d 1375, 1384 (Fed. Cir. 2013). The Court found that (1) the Defendants fell within the purview of the original injunction because they were "acting in concert" with AE Tech in connection with the resale of the redesigned products, and (2) failure to enjoin their conduct would

thwart the purposes of that injunction.

Other courts, including the Sixth Circuit, likewise support contempt remedies against third parties violating the terms of an injunction "in concert." *See, e.g.*, *M & C Corp. v. Erwin Behr GmbH & Co., KG*, 508 F. App'x 498, 502 (6th Cir. 2012) (holding that "a party seeking contempt sanctions against a nonparty must prove that the nonparty knew of the injunction and knowingly aided and abetted an enjoined party or its agents to violate the injunction"); *see also Mt. Valley Pipeline, LLC v. Easements To Construct, Operate, & Maintain A Nat. Gas Pipeline*:

> Similar conduct by persons subject to an injunction, which resulted in a clear violation by non-parties, warranted contempt sanctions. *See*, *e.g.*, *Roe v. Operation Rescue*, 54 F.3d 133, 138-39 (3d Cir. 1995) (reversing district court where it failed to enter a contempt order against a party who, although he was not present and did not participate directly in a blockade that violated the injunction, gave a speech encouraging others to attend and helped to organize, publicize, and raise money to support the blockade); *see also Regal Knitwear*, 324 U.S. at 14 ("[D]efendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding.").

No. 7:17-cv-00492, 2018 WL 2088762, at *6 (W.D. Va. May 4, 2018).

### 2. ASD is Acting In Concert with Hoffman and Hoffman Tactical

ASD's manufacture, use, sale, and offering for sale its products made using Defendants' infringing Super Safety files fall squarely within Hoffman's intent to flood the market with products so completely as to frustrate the government and therefore constitutes action "in concert" with Hoffman to distribute the infringing devices.

In Mr. Skeriotis's letter, he suggests that for his clients to be liable, they must be "in privity with Mr. Hoffman or Hoffman Tactical, or that any client is acting as their agent, successor, alter ego, or proxy." *See* ASD Response, p. 2. But "privity" or "agency," is not required to be acting "in concert with" another. *See, e.g.*, *Aevoe*, 727 F.3d at 1384 (emphasis added) (citing *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 179-80 (1973) for the proposition that "'[a]ctive concert or

participation' has been interpreted to include both aiders and abettors of, **and** privies of, an enjoined party"); *Blockowicz v. Williams*, 630 F.3d 563, 567 (7th Cir. 2010) (emphasis added) (citation and internal quotation marks omitted) ("[A] person is in 'active concert or participation' with an enjoined party, and thus bound by the injunction, if he aids or abets an enjoined party in violating [the] injunction, **or** if he is in privity with an enjoined party.").

Mr. Hoffman has stated that his primary purpose in not seeking patent protection—but rather providing the 3D printing and STEP files for the infringing devices to the public for free—was to "make it impossible for the federal government to use their standard bully tactics to shut down yet another legal item" and that "[t]he popularity of the Super Safety is now great enough that even were [he] raided it would have little effect on the industry as a whole." PI Tr. Vol. III, 71:3-11. Hoffman testified that he has had contact with at least one person at ASD (PI Tr., 137:23-138:3 (Hoffman's testimony that ASD sold products "based on the information that [he provided through] the [CAD] files or the 3D print files"); Vol. II, 138:23 – 139:1; Vol. III, 8:11-17 ("As we discussed yesterday, I've had contact with at least one gentleman from that company."); 40:14-41:8 (Hoffman's testimony that he "assist[ed] ASD in "troubleshooting" its derivative Super Safeties, including by "point[ing] out a design flaw in one of their products" in August 2025); *see also id.* Vol. II, 14:14-23 (DeMonico testimony that ASD's current "primary product" is "an exact copy of the file provided by Mr. Hoffman" that "has his HT logo on the side"). More importantly, anyone who sells products manufactured in accord with the designs published by Defendants should be held to be acting "in concert" with Hoffman.

Sellers such as ASD are aiders and abettors of Hoffman's scheme and allowing them to continue to sell their infringing products frustrates the very foundation that led to the entry of the preliminary injunction itself. As noted above, "active concert or participation" has been interpreted

to include both aiders and abettors of, *and* privies of, an enjoined party. *See Aevoe*, 727 F.3d at 1384 (emphasis added) (citing *Golden State Bottling Co.*, 414 U.S. at 179-80 (1973) for the proposition that "'[a]ctive concert or participation' has been interpreted to include both aiders and abettors of, **and** privies of, an enjoined party"). And as shown, ASD is clearly working "in active concert" with Defendants by aiding, abetting, and supporting his overall goal of distributing Hoffman's product in an effort to frustrate "the federal government."

**WHEREFORE**, factual evidence and court precedent support the issuance of a show cause order why ASD should not be held in contempt, which is hereby requested.

Dated: March 5, 2026.                    Respectfully submitted,

By: /s/ Decker A. Cammack
    Decker A. Cammack (admitted *pro hac vice*)
    WHITAKER CHALK SWINDLE & SCHWARTZ PLLC
    301 Commerce Street, Suite 3500
    Fort Worth, TX 76102
    Telephone: (817) 878-0500
    Facsimile: (817) 878-0501
    DCammack@whitakerchalk.com

By: /s/ Glenn D. Bellamy
    Glenn D. Bellamy (admitted *pro hac vice*)
    WOOD, HERRON & EVANS, LLP
    600 Vine Street, Suite 2800
    Cincinnati, Ohio 45202
    Telephone: (513) 241-2324
    Facsimile: (513) 241-6234
    gbellamy@whe-law.com

By: /s/ Joseph Alan Jackson II
    Joseph Alan Jackson II, B.P.R. No. 030603
    SPEARS, MOORE, REBMAN & WILLIAMS, P.C.
    601 Market Street, Suite 400
    Post Office Box 1749
    Chattanooga, TN 37401 1749
    Telephone: (423) 756-7000
    Facsimile: (423) 756-4801
    jaj@smrw.com

    *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2026, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Plaintiffs will serve Messrs. Karlovic and Olson, as well as AS Designs, LLC, by sending a copy of this Motion via email and via certified mail, return receipt requested to their counsel of record, John Skeriotis. Parties may access this filing through the Court's electronic filing system.

By: */s/ Decker A. Cammack*