ABC IP, LLC *et al.*,

    *Plaintiffs*,

v.

TIMOTHY HOFFMAN, *et al.*,

    *Defendants*.

Case No. 1:25-cv-00389-CLC-CHS

Judge Curtis Collier

## NONPARTY AS DESIGNS' LIMITED RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION AND BRIEF FOR ORDER TO SHOW CAUSE WHY AS DESIGNS, LLC SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATING PRELIMINARY INJUNCTION (DOC. 52)

Nonparties AS Designs, LLC, Matthew Karlovic, and Calvin Olson (collectively, "AS Designs"), appearing specially and without waiving any jurisdictional or other defense, submit this limited response in opposition to Plaintiffs' "Motion and Brief for Order to Show Cause Why AS Designs, LLC Should Not Be Held in Contempt for Violating Preliminary Injunction" (Doc. 52, the "Show-Cause Motion").

The Show-Cause Motion should be denied because Plaintiffs are trying to use contempt to obtain against a nonparty relief the Court did not grant and that Plaintiffs have not pursued through ordinary provisional-relief procedures in the separate case they already filed against AS Designs. Rule 65(d)(2) does not authorize contempt against every company that receives notice and sells a similar product. It reaches only persons who, after notice, are legally identified with the enjoined party or knowingly aid that party's violation. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 112 (1969); *Blackard v. Memphis Area Med. Ctr. for Women, Inc.*, 262 F.3d 568, 576 (6th Cir. 2001); *PHG Techs., LLC v. St. John Cos., Inc.*, 529 F. Supp. 2d 852, 863 (M.D. Tenn. 2007). The Preliminary Injunction that the Court issued binds Defendants Hoffman, Hoffman

Tactical, and those persons described in Rule 65(d)(2). It does not bind "all who have notice" of it. *See* Doc. 45 at 14 n.6; Doc. 46 at 1. Yet Plaintiffs' theory is that any entity or individual alleged to be using or selling a product derived from Hoffman's publicly released design is automatically acting "in active concert" with Hoffman. That is not what Rule 65 permits.

The record Plaintiffs themselves created at the preliminary-injunction hearing defeats a finding of contempt. Plaintiffs' witness admitted that many third-party sellers were offering products "significantly before May of '25"; admitted that Hoffman's files had been reposted by "15 different user accounts on Odysee.com" and that "you can't put that genie back in the bottle"; and admitted he did not know what control Hoffman had over those third parties. PI Hr'g Tr. Vol. 2 (Doc. 37) at 16:20-24, 17:11-18:2, 20:6-11. Hoffman's only AS Designs-specific testimony was that he had a conversation with an AS Designs representative in August 2025—months before the injunction—in which he pointed out a design flaw in one product. PI Hr'g Tr. Vol. 3 (Doc. 38) at 41:6-8. Those facts do not come close to clear and convincing proof that AS Designs knowingly aided a post-injunction violation by Hoffman or Hoffman Tactical. They instead show independent third-party activity—the very sort of conduct Rule 65 does not encompass absent proof of an actual relationship or post-injunction aiding and abetting. *See Schenck v. Orosz*, 105 F. Supp. 3d 812, 821-22 (M.D. Tenn. 2015); *United States v. Elsass*, 769 F.3d 390, 399 (6th Cir. 2014).

## BACKGROUND

On February 11, 2026, the Court entered a Preliminary Injunction against Defendants Timothy Hoffman and Hoffman Tactical LLC. Doc. 46. The injunction prohibits Defendants and those persons described in Rule 65(d)(2) from making, using, selling, offering to sell, or importing the accused devices; disclosing or transferring the accused design files; and instructing or facilitating others to engage in the proscribed conduct. *Id*. at 1-2.

The accompanying Memorandum is equally important. Although the Court noted evidence that Hoffman knew of other companies making products "in accord with or based on" his design, Doc. 45 at 7-8, the Court expressly *rejected* Plaintiffs' proposed Sections 60(f) and 60(g), which would have required posting the injunction and purported to bind "all who have notice of" it. The Court held that such relief "exceeds what was requested in Plaintiffs' motion . . . and was not addressed during the preliminary-injunction hearing." *Id*. at 14 n.6.

Plaintiffs have already chosen to litigate directly against AS Designs elsewhere. Their Show-Cause Motion acknowledges a pending suit against AS Designs in the Middle District of North Carolina. Doc. 52 at 3 n.2 (citing *Rare Breed Triggers, Inc. v. AS Designs, LLC*, No. 1:25-CV-1192 (M.D.N.C.)). The hearing record says the same. When asked about AS Designs, DeMonico answered: "We've already filed a suit against AS Designs." PI Hr'g Tr. Vol. 1 (Doc. 36) at 47:8-9. Plaintiffs also identified other separate sellers as distinct companies with their own Super Safety-based products. *Id*. at 53:23-54:3.

Before the injunction was entered, the Court itself cautioned that its eventual scope was not yet known. When DeMonico was asked to speculate about whether an injunction against Hoffman would stop third parties, the Court stated: "No preliminary injunction has been issued yet. So even I don't know what the scope of that injunction would be," and "even I don't know what the injunction would say." PI Hr'g Tr. Vol. 2 (Doc. 37) at 19:22-20:2. The Court later resolved that scope question by entering a standard Rule 65(d)(2) injunction and by rejecting Plaintiffs' proposed "all who have notice" language. Doc. 45 at 14 n.6; Doc. 46 at 1.

The evidence Plaintiffs now cite regarding AS Designs does not change that analysis. Hoffman testified that "hundreds or thousands" of people had asked him for troubleshooting help, PI Hr'g Tr. Vol. 3 (Doc. 38) at 40:16-18, and that the only specific AS Designs contact he recalled

was an August 2025 conversation in which he pointed out a design flaw in one of AS Designs'

products, *id*. at 41:6-8. Plaintiffs' motion also relies on website language, pre-injunction industry

contacts, and a February 12, 2026 notice letter. Even taken at face value, those materials do not

show that AS Designs knowingly helped Hoffman violate the injunction after it was entered.

## ARGUMENT

**I.      CIVIL CONTEMPT AGAINST A NONPARTY REQUIRES CLEAR AND CONVINCING PROOF OF VIOLATION OF A DEFINITE ORDER AND KNOWING POST-INJUNCTION PARTICIPATION IN AN ENJOINED PARTY'S BREACH.**

Civil contempt is an extraordinary remedy. The movant must prove by clear and

convincing evidence that the alleged contemnor violated a definite and specific order of the Court

with knowledge of that order. *See NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir.

1987); *Glover v. Johnson*, 138 F.3d 229, 244 (6th Cir. 1998). That standard is especially important

here because Rule 65(d) is "designed to prevent uncertainty and confusion and to avoid founding

a contempt citation on a decree too vague to be understood." *Schmidt v. Lessard*, 414 U.S. 473,

476 (1974).

For a nonparty, the bar is higher still. Rule 65(d)(2) reaches only those nonparties who

receive actual notice and are either legally identified with the enjoined party or act in active concert

or participation with that party. Fed. R. Civ. P. 65(d)(2); *Zenith Radio*, 395 U.S. at 112. In deciding

whether a nonparty is bound, courts "must examine the actual relationship between the person

enjoined and the person thought to be bound by the injunction." *Blackard*, 262 F.3d at 576; *accord*

*S. Elec. Health Fund v. Kelley*, 308 F. Supp. 2d 847, 868 (M.D. Tenn. 2003); *PHG Techs.*, 529 F.

Supp. 2d at 863. The Sixth Circuit and Federal Circuit require proof that the nonparty knew of the

injunction and knowingly aided and abetted an enjoined party's violation. *M & C Corp. v. Erwin*

*Behr GmbH & Co.*, 508 F. App'x 498, 502 (6th Cir. 2012); *Additive Controls & Measurement*

*Sys., Inc. v. Flowdata, Inc.*, 154 F.3d 1345, 1351-53 (Fed. Cir. 1998). Rule 65's active-concert clause exists to stop enjoined parties from nullifying a decree through aiders, abettors, or instrumentalities used to evade the order—not to impose an industry-wide injunction on independent actors. *See Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 13-14 (1945); *Schenck*, 105 F. Supp. 3d at 821-22. A nonparty's independent conduct is not enough. *See Elsass*, 769 F.3d at 399; *Havens v. James*, 76 F.4th 103, 111-12 (2d Cir. 2023); *Blockowicz v. Williams*, 630 F.3d 563, 567-68 (7th Cir. 2010).

**II.  PLAINTIFFS IDENTIFY NO POST-FEBRUARY 11, 2026 VIOLATION BY HOFFMAN OR HOFFMAN TACTICAL THAT AS DESIGNS KNOWINGLY AIDED.**

Plaintiffs do not identify any post-February 11, 2026 violation by Hoffman or Hoffman Tactical that AS Designs supposedly assisted. That omission is fatal. *See Warner/Chappel Music, Inc. v. Blue Moon Ventures, Inc.*, No. 3:10-1160, 2011 WL 13281770, at *4 (M.D. Tenn. Oct. 21, 2011) ("a nonparty in active concert cannot violate an injunction unless the enjoined party is also in contempt"). The Show-Cause Motion is not built around any act Hoffman took after entry of the injunction and then caused AS Designs to facilitate, nor does the Motion seek to hold Hoffman or Hoffman Tactical in contempt. Instead, Plaintiffs point to years-old public file releases, historical third-party sales, pre-injunction contacts, and AS Designs' own alleged conduct. Doc. 52 at 3-5, 9-10. Even if all of that were true, it would not show that AS Designs aided a post-injunction breach by the enjoined defendants. Nor would it establish the sort of actual relationship between Hoffman and AS Designs that Rule 65(d)(2) requires. *See Blackard*, 262 F.3d at 576; *S. Elec. Health Fund*, 308 F. Supp. 2d at 868.

The hearing testimony underscores the point. DeMonico admitted many alleged third-party sellers were already in the market "significantly before May of '25." PI Hr'g Tr. Vol. 2 (Doc. 37)

at 16:23-24. He acknowledged that as of the night before his testimony, "15 different user accounts on Odysee.com" had Hoffman's files available for download, id. at 17:11-13, and that after one release "you can't put that genie back in the bottle," id. at 18:1-2. He also admitted: "I don't know what kind of control Mr. Hoffman has over anyone." Id. at 20:10-11. Those are not contempt facts. They are admissions that third-party republication and independent sales existed apart from any post-injunction direction or control by Hoffman. *See PHG Techs*., 529 F. Supp. 2d at 863; *Elsass*, 769 F.3d at 399.

The AS Designs-specific testimony is even weaker. Hoffman testified that "hundreds or thousands" of people had asked him for troubleshooting assistance. PI Hr'g Tr. Vol. 3 (Doc. 38) at 40:16-18. The only AS Designs example he gave was a conversation "in, I believe, August of 2025" in which he pointed out a design flaw in one of AS Designs' products. Id. at 41:6-8. That was half a year before the Preliminary Injunction issued on February 11, 2026. Doc. 46. Pre-injunction assistance cannot establish contempt of a later order, and historical troubleshooting is not the kind of post-injunction assistance Rule 65(d)(2) targets. *See M & C Corp.*, 508 F. App'x at 502; *Schenck*, 105 F. Supp. 3d at 821-22.

### III. PLAINTIFFS' CONTEMPT THEORY DIRECTLY CONTRADICTS THE INJUNCTION AND THE COURT'S ACCOMPANYING MEMORANDUM.

Plaintiffs' theory also contradicts the order they invoke. The Preliminary Injunction uses standard Rule 65(d)(2) language. Doc. 46 at 1. The accompanying Memorandum expressly refused to add Plaintiffs' proposed provisions that would have required posting the injunction and would have bound "all who have notice of" it. Doc. 45 at 14 n.6. That refusal matters. Rule 65 relief must be no broader than necessary, and the active-concert language is not a license to transform a party-specific order into a market-wide ban. *See Blackard*, 262 F.3d at 574-76; *Regal Knitwear*, 324 U.S. at 13-14. Yet the Show-Cause Motion proceeds as if notice plus alleged copying or design

similarity were enough to make any seller a contemnor. That is simply the rejected "all who have notice" theory repackaged.

Nor can Plaintiffs stretch the Court's findings beyond what the Court actually found. The Memorandum recited evidence that Hoffman knew certain companies were making products "in accord with or based on" his design. Doc. 45 at 7-8. But knowledge that third parties exist is not a finding of agency, proxy status, alter ego, legal identity, or post-injunction aiding and abetting. *See Elsass*, 769 F.3d at 399 (nonparty may not be brought within an injunction merely by naming him, and an actor proceeding on his own behalf is not swept in); *PHG Techs.*, 529 F. Supp. 2d at 863 (court must examine actual relationship); *Schenck*, 105 F. Supp. 3d at 821-22 (Rule 65(d)(2) targets aiders and abettors). After reviewing the hearing testimony, the Court refused to enter the overbroad language Plaintiffs wanted. Doc. 45 at 14 n.6.

## IV. HOFFMAN AND AS DESIGNS ARE NOT IN ACTIVE CONCERT, AND AS DESIGNS DOES NOT USE HOFFMAN'S CAD DRAWINGS FOR ITS SUPER SAFETY OR ARC FIRE PRODUCTS.

Authorities confirm that the "active concert or participation" requirement is narrow and targets aiders, abettors, successors, or entities legally identified with the enjoined party—not independent actors engaged in similar conduct. *See, e.g., Talavera Hair Prods. v. Taizhou Yungsung Elec. Appliance Co.*, No. 3:18-cv-00823-RBM-JLB, 2024 WL 85881, at *2-3 (S.D. Cal. Jan. 8, 2024).

Tim Hoffman and AS Designs are not in active concert with one another. Declaration of Matthew Karlovic ("Karlovic Decl.")[1] at ¶11; *see also* Declaration of Tim Hoffman (Doc. 59-1) at ¶¶ 10-18. AS Designs is not an aider, abettor, successor-in-interest, in privity with or legally

---

[1] Declaration of Matthew Karlovic is attached as Exhibit 1

identified with or controlled in any way by Hoffman or Hoffman Tactical and vice versa.  Doc. 59-1 at ¶¶ 10-14; Karlovic Decl. at ¶12.

As for the manufacture and sale of AS Designs' Super Safety and its ARC Fire, AS Designs does not use Hoffman's CAD drawings for either its Super Safety or its ARC Fire.  Karlovic Decl. at ¶4. AS Designs utilizes its own drawings, its own CAD files and, thus its own design related to its Super Safety and its ARC Fire products.  *Id*. at ¶5.

The Federal Circuit has explained that injunctions may not be used to regulate the independent conduct of nonparties whose rights have not been adjudicated. *See Asetek Danmark A/S v. CMI USA Inc*., 852 F.3d 1352, 1365-66 (Fed. Cir. 2017); *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc*., 96 F.3d 1390, 1394 (Fed. Cir. 1996). Courts therefore require evidence that the nonparty's conduct is not independent but instead undertaken to assist or enable the enjoined party's violation. Here, AS Designs and Hoffman are completely independent from one another. Doc. 59-1 at ¶¶ 10-16; Karlovic Decl. at ¶6.

Courts addressing similar circumstances have refused to extend injunctions to downstream manufacturers or sellers absent proof of coordinated activity after entry of the injunction. For example, courts have rejected attempts to treat distributors or manufacturers as acting in concert where the evidence showed only similar conduct or historical relationships rather than post-injunction assistance. *See Paramount Pictures Corp. v. Carol Publ'g Grp., Inc.*, 25 F. Supp. 2d 372, 375-76 (S.D.N.Y. 1998); *O & L Assocs. v. Del Conte*, 601 F. Supp. 1463, 1465 (S.D.N.Y. 1985); *Petersen v. Fee Int'l, Ltd.*, 435 F. Supp. 938, 943-44 (W.D. Okla. 1975).

Hoffman and AS Designs have not coordinated together on any activity whatsoever since the injunction was issued against Hoffman. Karlovic Decl. at ¶7; *see also* Doc. 59-1 at ¶¶ 17-18. Hoffman and AS Designs do not have and have never had any commercial relationship with one

another. Karlovic Decl. at ¶8; Doc. 59-1 at ¶¶ 10-12. Hoffman and AS Designs do not have any formal agreement with one another. Karlovic Decl. at ¶9; Doc. 59-1 at ¶¶ 13-14. Hoffman and AS Designs have not transacted any business resulting in any payments from one to the other at any time. Karlovic Decl. at ¶10; Doc. 59-1 at ¶¶ 15-16. In short, there is no acting in concert here.

## V. CONTEMPT IS NOT A SUBSTITUTE FOR PLAINTIFFS' SEPARATE INFRINGEMENT ACTION AGAINST AS DESIGNS.

The proper vehicle for Plaintiffs' claims against AS Designs is the case in which AS Designs is a party. Plaintiffs admit they have already sued AS Designs in the Middle District of North Carolina. Doc. 52 at 3 n.2; PI Hr'g Tr. Vol. 1 (Doc. 36) at 47:8-9. If Plaintiffs believe AS Designs independently infringes their patents, they may litigate infringement, validity, claim scope, personal jurisdiction, and any request for provisional relief in that case. What they may not do is transform the Hoffman injunction into a *de facto* injunction against a different defendant in a different lawsuit. That is precisely the sort of expansion Rule 65 forbids absent proof that the nonparty is actually identified with, represented by, or knowingly assisting the enjoined defendant. *See Blackard*, 262 F.3d at 576; *S. Elec. Health Fund*, 308 F. Supp. 2d at 868.

That is especially true here, where Plaintiffs' own litigation choices show that contempt is being used as a substitute for direct provisional-relief practice. Publicly available dockets reviewed as of March 24, 2026, in Plaintiffs' separate case against AS Designs and in several other parallel seller cases identified at the PI hearing—including actions against 80 Mills, Harrison Gunworks, Kline, Nguyen/Polymer Pew, and Z3 Productions—do not reflect any motion for temporary restraining order or preliminary injunction. By contrast, Plaintiffs know how to seek direct provisional relief when they choose to do so. DeMonico testified that Plaintiffs had sought injunctive relief in other suits and that they had obtained a preliminary injunction against another group of defendants he called the "Big Daddy Group." PI Hr'g Tr. Vol. 2 (Doc. 37) at 20:14-20,

9

34:9-13. Plaintiffs also moved for – but were *denied* – a preliminary injunction in another parallel case. *See ABC IP, LLC v. Peak Tactical LLC*, No. 2:26-cv-00018, Doc. 6 (D. Wyo. Jan. 16, 2026) (motion for preliminary injunction DENIED). The point is not why Plaintiffs made those choices. The point is that contempt is not a permissible shortcut to obtain in this case the broader, seller-specific relief Plaintiffs either did not seek or did not obtain elsewhere.

## VI.  TO THE EXTENT PLAINTIFFS SEEK TO REACH THE ARC-FIRE OR ANY MODIFIED PRODUCT, CONTEMPT IS IMPROPER.

To the extent Plaintiffs seek to sweep in AS Designs' ARC-Fire or any other modified product, contempt is even less appropriate. In patent contempt proceedings, the movant must prove by clear and convincing evidence that the newly accused product is not more than colorably different from the adjudicated product and that it actually infringes the claims as previously construed. *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 882-83 (Fed. Cir. 2011) (en banc). Plaintiffs' own motion confirms that the ARC-Fire raises product-specific questions outside the present injunction record. Those questions belong in ordinary merits litigation, not in summary contempt proceedings against a nonparty.

### CONCLUSION

For all of these reasons, AS Designs respectfully requests that the Court deny Plaintiffs' Show-Cause Motion in its entirety and grant such other relief as the Court deems just and proper.

Dated: March 26, 2026

Respectfully submitted,

**CHAMBLISS, BAHNER & STOPHEL, P.C.**

*/s/ John G. Jackson*
John G. Jackson, Tenn. Bar No. 013840
Liberty Tower -605 Chestnut St., Suite 1700
Chattanooga, Tennessee 37450
Telephone: 423.757.0246
Facsimile: 423.508.1246
jjackson@chamblisslaw.com

AND


**EMERSON, THOMSON & BENNETT, LLC**

*/s/ John M. Skeriotis*
John M. Skeriotis, *pro hac vice motion to be filed*
1914 Akron-Peninsula Road
Akron, Ohio 44313
Telephone: (330) 434-9999
jms@etblaw.com

*Attorneys for Nonparties AS Designs, LLC, Matthew Karlovic, and Calvin Olson*


## CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2026, the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular United States mail. Parties may access this filing through the Court's electronic filing system.

*/s/John G. Jackson*
John G. Jackson