# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| ABC IP, LLC, a Delaware limited liability company, and RARE BREED TRIGGERS, INC., a Texas corporation,<br><br>    Plaintiffs,<br><br>vs.<br><br>TIMOTHY HOFFMAN, an individual, and HOFFMAN TACTICAL LLC, a Tennessee limited liability company,<br><br>    Defendants. | Case No.: 1:25-cv-00389-CLC-CHS<br><br>Hon. Curtis Collier |

## <u>PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR ORDER TO SHOW CAUSE</u>

As the Court is aware, this is an action for patent infringement in which ABC IP, LLC ("ABC") and Rare Breed Triggers, Inc. ("Rare Breed") (collectively, "Plaintiffs") accuse HOFFMAN TACTICAL LLC ("HT") and TIMOTHY HOFFMAN ("Hoffman") (collectively, "Defendants"), of infringing U.S. Patent No. 12,038,247 ("the '247 Patent"), U.S. Patent No. 12,031,784 ("the '784 Patent"), U.S. Patent No. 7,398,723 ("the '723 Patent") and U.S. Patent No. 12,529,538 ("the '538 Patent"), as well as alleging other claims.

Plaintiffs submit this Reply to respond to the arguments presented by Defendants in the Response in Opposition to Plaintiffs' Motion for Order to Show Cause ("Response") (Doc. 59), and in further support of Plaintiffs' Motion and Brief for Order to Show Cause Why AS Designs, LLC ("ASD") Should Not Be Held in Contempt for Violating Preliminary Injunction ("Motion") (Doc. 52).

While the Response correctly recites certain case law (without and within the Sixth Circuit) concerning the application of Rule 65(d)(2)(C)'s "aiding and abetting" prong, and Mr. Hoffman

avers in the attached Declaration (Doc. 59-1) ("Hoffman Show Cause Declaration") that (i) he has no formal relationship(s) with ASD and its principals, and (ii) his post-Preliminary Injunction contacts with ASD principals have been limited, Plaintiffs respectfully submit that the relevant law provides some basis for a finding that ASD's actions constitute "aiding-and-abetting" contempt, or, alternatively, should be extended or modified to cover the unique factual scenario presented here. Specifically,

- Prior to entry of the Preliminary Injunction, Mr. Hoffman widely disseminated his designs (now preliminarily held to infringe, and which, per ASD's public representations on its website, form the basis for ASD's products described in the Motion), in accordance with his hopes that this wide dissemination would flood the market with his products (or variations thereof) and be difficult or impossible to materially undo[1];

- ASD's sales of those devices / derivations are ongoing, including in this forum, and are being made with Mr. Hoffman's knowledge (and apparently without discouragement on his part); and

- Those facts, coupled with Mr. Hoffman's ongoing contacts with ASD, suggest some level of coordination (and not entire "independence" on part of ASD) that, if not specifically addressed in extant case law, should be interpreted to fall within Rule 65(d)(2)(C)'s aiding-and-abetting prong because, otherwise, the clear directives and purpose of the Court's Preliminary Injunction will be frustrated and thwarted, *viz.*: the preclusion of Defendants and "all others acting in acting concert therewith" from

  o "infringement or contributing to the infringement of" the '247 Patent and '784 Patents,

---

[1] In other words, because Mr. Hoffman's pre-injunction conduct is essentially irrevocable, it may be said to substantially *persist* following the entry of the Preliminary Injunction even where he has taken steps to comply with its letter.

2

by, *inter alia*, "selling" or "offering for sale . . . the Super Safety device or any derivatives of it," whether "for the purpose of use or offering such products for sale . . . by retail, through distributors, or wholesale"; and

o "licensing or attempting to license any third party for the purpose of selling, offering for sale . . . distributing, or promoting the Super Safety or derivative designs." (Prelim. Inj. 1-2.)

## I.    **<u>BACKGROUND</u>**

As the Court has determined, "[o]n July 20, 2023, prior to entry of the TRO, Mr. Hoffman publicly distributed CAD and 3D-print files of infringing devices together with instructions for their manufacturing and use ("Super Safety Files"), and various companies, including ASD, are known to Mr. Hoffman to "make products 'in accord with or based on' his Super Safety design." (Mem. Op. (Doc. 45), at 7-8 ¶¶ 13, 15.)

On February 11, 2016, the Court entered the Preliminary Injunction against Defendants, enjoining various acts of "infringement or contributing to the infringement of" the '247 and '784 Patents (Doc. 46), including refraining from "making, using, selling, [or] offering for sale . . . the Super Safety device or any derivatives . . . for the purpose of use or offering such products for sale." (*Id.*)  Specified as those subject to the strictures of the Preliminary Injunction were "other persons who are in active concert or participation" with actual notice of the Preliminary Injunction, consistent with Rule 65(d)(2)(C). The Court also issued the Memorandum Opinion explaining the basis for the Injunction.[2]

---

[2] Plaintiffs acknowledge the Court's ruling that, because the relief requested in Paragraphs 60(f)-(g) of Plaintiffs' Proposed Findings of Fact and Conclusions of Law in Support of Their Motion for Preliminary Injunction (Doc. 41), at 13-14 ¶¶ 60(f)-(g)) "exceed[ed] what was requested in Plaintiffs' motion (Doc. 14) and was not addressed during the preliminary-injunction hearing," it declined to include those paragraphs in the Preliminary Injunction.

Following entry of the Preliminary Injunction, Plaintiffs notified certain non-parties of its issuance—namely persons and entities that, per Mr. Hoffman's testimony, were known by him to make products "in accord with or based on" the Super Safety (*see* Mot. Ex A (Doc. 54-1) (Decl. of Decker A. Cammack ("Cammack Decl."), at ¶ 4 & Ex. 1), and with whom he had been in contact and/or provided technical assistance prior to the commencement of this lawsuit (*see* Mot. for Prelim. Inj. Tr., Vol. II (Doc. 37), 137:15-139:1; Vol. III (Doc. 38), 7:18-25, 8:11-17, 41:1-8); *see also* Decl. of Timothy Hoffman in Supp. of Defs.' Resp. to Pl.'s Mot. for Prelim. Inj. (Doc. 26-1) ("Hoffman Decl.") ¶ 15 (identifying ASD, https://activesafetydesigns.com/ss-parts/, as a company "known to [him] to make components in accord with or based on [his] new design for a safety-selector-modified repeat reset trigger," *i.e.*, a Super Safety). ASD's website specifically states that "**All SS products are made following the Hoffman Tactical design and specs**") (Cammack Decl. ¶ 6 (emphasis added) (referencing and including screenshot from ASD website including that language)).

In response, counsel for ASD advised that ASD would not change its conduct based on the Preliminary Injunction and explained why it did not believe that the law required it to do so. (*See* Cammack Decl., Ex. 2.)

On March 5, 2026, Plaintiffs filed the Motion, and, on March 19, 2026, Defendants filed the Response, in which they contend that:

- Plaintiffs' attempt to enforce the Preliminary Injunction against ASD constitutes an attempt to stretch the injunctive relief awarded by the Court beyond its proper boundaries and improperly enforce it against "'the whole world'" (Resp. 1 (quoting *Swetland v. Curry*, 188 F.2d 841, 843 (6th Cir. 1951));

- The files at issue were published by Mr. Hoffman *prior* to the entry of the Preliminary Injunction, and (i) he took them down in accordance with the Preliminary Injunction and has not reposted or otherwise transmitted them; (ii) he has no financial relationship with ASD and, hence, is not in privity with it[3]; and (iii) a non-party cannot act in concert with him to violate the Preliminary Injunction when *he* has complied with it (Resp. 1-4);

- The referenced non-parties (presumably ASD) have "no relationship with the enjoined parties," *i.e.* Mr. Hoffman and HT (Resp. 2);

- Plaintiffs misconstrue the requisite standard for holding a nonparty in contempt for violating an injunction because Sixth Circuit precedent requires that, for a nonparty to be held in contempt for violating an injunction, **the enjoined party necessarily must *also* be in contempt** (Resp. 2-3);

- Any material link between Defendants and ASD *predated* the entry of the Preliminary Injunction, and "[o]ne cannot violate a preliminary injunction based on the conduct that predated its initial date of entry" (under, *inter alia*, *Union Home Mortg. Corp. v. Cromer*, 31 F.4th 356, 364 n.3 (6th Cir. 2022)) (Resp. 3-4); and

- There is no evidence that ASD's conduct "was taken for the benefit of, or to assist" Defendants (Resp. 4) (quoting *Adcor Indus., Inc. v. Bevcorp, LLC*, 411 F. Supp. 2d 778, 794 (N.D. Ohio 2005) [hereinafter, "*Adcor*"] (citation and internal quotation marks omitted), and the Hoffman Show Cause Declaration demonstrates that ASD provided no assistance to Defendants in connection with enjoined conduct (*id.*)

Thus, reduced to its essence, the Response appears to be grounded in the premises that (i)

---

[3] Plaintiffs have not proceeded in the Motion on a "privity" theory under Rule 65(d)(2)(C), only an "aiding-and-abetting" theory. (*See* Mot. 9-10.)

in order for a non-party to be held in contempt on an aiding-and-abetting theory under Rule 65(d)(2)(C), the enjoined party-defendant must *itself* have taken affirmative, post-injunction actions that violate the injunction; and (ii) correspondence and relations between the purported non-party contemnor and enjoined party-defendant that took place prior to entry of the injunction are entirely irrelevant to the analysis.

Respectfully, it does not appear to Plaintiffs that those propositions are incontrovertible statements of published, controlling Sixth Circuit precedent applicable to this proceeding. And some authorities cast at least some doubt on that interpretation of Rule 65(d)(2)(C).

## II.  LAW AND ANALYSIS

### a.  The Law Pertaining to Contempt for "Aiding and Abetting" Liability Under Rule 65(d)(2)(C) Is Unsettled, and Each Inquiry Concerning Non-Party Contempt is Fact Specific

"The Sixth Circuit has provided little guidance regarding non-party liability under Rule 65(d)." *Adcor*, 411 F. Supp. 2d at 794 n.30; *see M & C Corp. v. Erwin Behr GmbH & Co., KG*, 508 F. App'x 498, 502 (6th Cir. 2012) (unpublished)[4] (citing, *inter alia*, *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 154 F.3d 1345, 1353 (Fed. Cir. 1998) & *Elec. Workers Pension Trust Fund of Local Union # 58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 379 (6th Cir. 2003)). ("[A] party seeking contempt sanctions against a nonparty must prove [by clear and convincing evidence] that the nonparty knew of the injunction and knowingly aided and abetted an enjoined party or its agents to violate the injunction."); *Union Home Mortg. Corp.*, 31 F. 4th at 364 n.3 (stating that a district court did not "make findings to support" the relief requested under Rule 65(d)(2) against a non-party "based upon what occurred in the past" and quoting *U.S. v. W.T.*

---

[4] In addressing an unrelated issue discussed in *M&C Corp.*, the Sixth Circuit subsequently noted, in a published case, that it "was unpublished and is therefore not binding." *Blessing v. Chandrasekhar*, 988 F.3d 889, 897 (6th Cir. 2021).

*Grant Co.*, 345 U.S. 629, 633 (1953) for the proposition that "'[t]he purpose of an injunction is to prevent future violations'"); *see also Homeland Housewares, LLC v. Euro-Pro Operating LLC*, No. CV 14-03954, 2014 WL 4449922, at *3 (C.D. Cal. Sept. 10, 2014) (stating that "[w]ho is in 'active concert or participation with' a party is not a fully settled area of law"; the "Ninth Circuit has not specifically addressed the question of whether retailers who sell a party's enjoined product are in 'active concert'" with it; and "in general the inquiry is likely to always be fact-intensive" and citing *Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.*, 91 F.3d 914, 919 (7th Cir. 1996) for the proposition that there is not a "bright line dividing those who are 'aiding and abetting' the enjoined party from those who are merely in business with the party at arm's length but in a way that incidentally subverts the intent of the injunction").[5]

Under *Adcor*'s formulation, "[i]n order to show that a non-party 'aided and abetted' a party subject to the decree, the plaintiff must show that the non-party [a] had actual knowledge of the judicial decree and [b] violated it, and that [c] the challenged action was taken for the benefit of,

---

[5] *Rockwell Graphic Systems, Inc.* states, in pertinent part, as follows:

> [The "privity" and "aiding and abetting"] constructions of the "active concert or participation" language of Rule 65(d) recognize that the objectives of an injunction may be thwarted by the conduct of parties not specifically named in its text. The scope of an injunction has no rigid perimeter, and a court may modify an injunction to adapt to changed circumstances. *Swift & Co.*, 286 U.S. at 114–15, 52 S.Ct. at 462. Even absent such modification, however, a nonparty's actions may render it susceptible to the injunction's effect. Thus, as the cases cited above illustrate, **the reach of an injunction will accord with its purpose(s)**, subject to the limitations of due process. A court must consider the extent of the alleged "active concert or participation" of third parties with those named in the injunction in determining whether the injunction's prohibitions shall apply to those third parties.

91 F.3d at 920 (emphasis added); *see also Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 674 (3d Cir. 1999) (citation and internal quotation marks omitted) ("The law does not permit the instigator of contemptuous conduct to absolve himself of contempt liability by leaving the physical performance of the forbidden conduct to others.").

or to assist, a party subject to the decree." 411 F. Supp. 2d at 794 (bracketed inserts added).[6]

Recognizing the inherently fact-intensive nature of this inquiry, however formulated, the Sixth Circuit has held that "[t]o determine whether a person is one who acts in concert or is identified in interest with the enjoined party, the court must look to the actual relationship between the person enjoined and the person thought to be bound by the injunction." *Blackard v. Memphis Area Med. Ctr. for Women, Inc.*, 262 F.3d 568, 574 (6th Cir. 2001) (citing *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945)).

At least some decisions from across the country applying Rule 65(d)(2)(C)'s aiding-and-abetting provide considerations and language grounding the points Plaintiffs seek to articulate.[7]

- *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d 606, 638 (S.D.N.Y. 2018) [hereinafter "*John Wiley*"]. In *John Wiley*, the United States District Court for the Southern District of New York noted that, in the Second Circuit, courts "have found 'active concert' between non-parties and already-enjoined parties in cases where an enjoined party is substantially intertwined with a non-party, including the shared occupation of office space, payment of employee expenses between the non-party and enjoined party, considerable control by the enjoined party over the non-party's operations, and other substantial interconnections .

---

[6] At least some authorities state that a non-party's *motive* in aiding-and-abetting is not relevant. *See Eli Lilly & Co. v. Gottstein*, 617 F.3d 186, 193 (2d Cir. 2010) (citations and internal quotation marks omitted) ("[A] court's inquiry into the fact of aiding and abetting is "directed to the actuality of concert or participation, without regard to the motives that prompt the concert or participation.").

[7] To the extent that the law, as currently stated, has not addressed (or runs counter to) the position Plaintiffs put forward herein, they respectfully submit that the Court should consider extending or modifying the law to apply to the unique circumstances present in this case, *i.e.*, when, prior to entry of an injunction, an enjoined party took steps that cannot be successfully "undone" after entry of an injunction (*i.e.*, distributing files to all takers) such that third parties can engage in conduct that would certainly be precluded if the enjoined party had undertaken it following entry of the injunction.

. . . ." (citation and internal quotation marks omitted).[8]

- *Arista Records, LLC v. Tkach*, 122 F. Supp. 3d 32 (S.D.N.Y. 2015) [hereinafter "*Arista Records*"]. In *Arista Records*, plaintiffs obtained a judgment and permanent injunction against a party that operated a website that was implicated in the unlawful distribution of the plaintiffs' copyrighted material. *See id.* at 33. Following entry of that injunction, the plaintiffs discovered that others were distributing "copycat" versions of that website (and material), and brought a lawsuit against those persons in which it obtained a TRO precluding them from, *inter alia*, "'[u]sing, linking to, transferring, selling, exercising control over, or otherwise owning the domain names'" of the websites distributing copyrighted content. *Id.* When the defendants continued to create links to the enjoined website through the use of third-party domain name registrars (forcing the plaintiffs into a game of "whack-a-mole"), the plaintiffs served a copy of the TRO on CloudFlare, an internet service provider that, in essence, permitted users to access the enjoined websites more readily than they otherwise would have been able to do. *See id.* at 34. When CloudFlare responded that it did not believe the TRO applied to it, the plaintiffs moved for a show-cause order. *Id.* at 35. CloudFlare responded that it could not properly be

---

[8] Plaintiffs acknowledge that Mr. Hoffman's characterization of the relationship between him and ASD does not reach the level of "substantial intertwinement" discussed in *John Riley* and other cases applying the "substantial intertwinement" test. Nevertheless, on the unique facts present in this case, Plaintiffs respectfully submit that ASD's ongoing use of designs that are materially identical to or at least largely based on Mr. Hoffman's enjoined designs constitutes "intertwinement" between them even absent a formal corporate or financial arrangement, such as a licensing or distribution agreement that would place them in formal privity. In other words, by knowingly making his designs available to the world at large, Mr. Hoffman put into motion a course of events practically tailor-made to frustrate attempts at enforcement. By way of analogy, if (i) A [Defendants] stole an article from B [Plaintiffs] and gave it to C [ASD]; (ii) B then obtained injunctive relief against A requiring him to return it; (iii) A could not return it because C had it; (iv) C refused to return it; and (v) A took no steps to encourage C to return the Article to B and benefited from C's ongoing possession, it seems reasonable to contend that A (and C) would have violated the injunction in spirit, if not in letter.

9

enjoined because, *inter alia*, its services were passive, and it was not in active concert or participation with the defendants violating the TRO. *See id.* at 35-36. Noting (i) the "venerable proposition that 'a person who knowingly assists a defendant in violating an injunction subjects himself to civil as well as criminal proceedings for contempt,'" *id.* at 35 (quoting *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 832 (2d Cir. 1930)); and (ii) authorities stating that the "'active concert or participation' clause is designed to prevent . . . the addressee of an injunction, eager to avoid its obligations, persuad[ing] a friendly third party to take steps that frustrate the injunction's effectiveness," the court held that CloudFlare was in active concert or participation with the defendants, *id.* at 36-38 (quoting *Lindland v. U.S. Wrestling Ass'n*, 227 F.3d 1000, 1006 (7th Cir. 2000)).[9]

In light of those precedents, a close inspection of the "actual relationship" between Defendants and ASD suggests that ASD should be required to show cause *even if* (i) Defendants themselves did not take identifiable affirmative steps that violated the Preliminary Injunction *after* its entry; and (ii) pre-injunction conduct—*coupled with ASD's post-injunction actions* in marketing and selling in Tennessee products that are obviously (and avowedly) based on

---

[9] The court further rejected CloudFlare's reliance on *Blockowicz v. Williams*, 630 F.3d 563 (7th Cir. 2010), *see Arista Records*, 122 F. Supp. 3d at 37, in which the Seventh Circuit held that companies operating third-party websites were not in active concert or participation with an enjoined party because their only material relation to the enjoined parties was the execution of a contract "long before the injunction issued," *Blockowicz*, 630 F.3d at 568-69. Here, the acts of ASD that Plaintiffs contend violate the injunction—the sale of Super Safety devices—took place after entry of the Preliminary Injunction and with notice thereof.

Defendants' designs—suffice to establish aiding and abetting liability on part of ASD.

> **b.** **On the Facts Presented Here, ASD Should Be Required to Show Cause Why It Should Not Be Held in Contempt for Selling Devices That This Court Has Enjoined Defendants from Selling**

Here (under the *Adcor* formulation) there is no question that [a] ASD had knowledge of the Preliminary Injunction. And while [b] ASD's violation of the Injunction would be the subject of the show cause proceedings; ASD itself expressly proclaims on its website that "**All SS products [it provides or sells] are made following the Hoffman Tactical design and specs**." (emphasis added).  Because the Preliminary Injunction specifically prohibits "making, using, selling, [or] offering for sale . . . the Super Safety device or any derivatives . . . for the purpose of use or offering such products for sale," there are good reasons to contend that ASD is doing what the Preliminary Injunction prohibits, thereby violating it.

This leaves the [c] prong (under the *Adcor* formulation)—*i.e.*, that ASD in doing so is acting "for the benefit of, or to assist" Defendants. As noted above, Defendants argue that, in order to provide the requisite assistance, ASD must be "assisting" them in their *own* violation of the Preliminary Injunction.

However, Plaintiffs submit that the *Adcor* formulation is broader than that—that is, that in engaging in sales of enjoined devices (and thereby "violating" the specific terms of the Preliminary Injunction), ASD intends to ***further the stated purposes or stratagem of Defendants***, which are also beneficial to it by frustrating Plaintiffs' attempts to enforce the Preliminary Injunction (and its intellectual property rights more broadly). That stratagem is somewhat unusual, if not *sui generis*—Mr. Hoffman wanted (and doubtless still wants) to flood the market with infringing products so as to defeat Plaintiffs' patent rights, whether or not that turns him a profit, and, by disseminating his designs so widely, has essentially contrived it so that any enforcement by

11

Plaintiffs of their legitimate rights will be effectively impossible.

However, rather than Defendants continuing to do that *directly* (ostensibly foregone presently due to the Preliminary Injunction), they are looking to those in Mr. Hoffman's circle (*i.e.*, certain sectors of the firearm-modification community) to **pass on** the infringing SS product he **previously provided** those friends. In so doing, ASD in particular is seeking to "assist" Defendants' stratagem to get the infringing SS product out to as many as possible—***indirectly*** doing what Hoffman is constrained from doing ***directly***.

Thus, under the unique circumstances of this case, this continued course of conduct by ASD is arguably in contempt of the Preliminary Injunction. And while Mr. Hoffman, by his own admission, remains in contact with ASD and has communicated with its principals following entry of the Preliminary Injunction, there is no evidence that he has requested that ASD cease selling devices that would surely expose him to contempt were he selling them. In other words, he is glad to tolerate their conscious efforts to thwart the purposes of the Preliminary Injunction. *See* 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2956 (3d ed.) ("Courts are likely to find contemptuous conduct on the part of unnamed persons when the facts indicate that there has been a conscious scheme to thwart an earlier decree.").[10]

### III.   CONCLUSION

For the reasons explained above and in the Motion, Plaintiffs respectfully request that this Honorable Court enter an order requiring ASD to show cause why it should not be held in contempt

---

[10] And, of course, Plaintiffs have as yet been unable to examine Defendants and ASD concerning the exact nature of their relationship and communications.

for selling enjoined devices following entry of the Preliminary Injunction with knowledge thereof.

Dated:  March 26, 2026.                    Respectfully submitted,

By:  /s/ Decker A. Cammack
       Decker A. Cammack (admitted *pro hac vice*)
       WHITAKER CHALK SWINDLE & SCHWARTZ PLLC
       301 Commerce Street, Suite 3500
       Fort Worth, TX 76102
       Telephone: (817) 878-0500
       Facsimile: (817) 878-0501
       DCammack@whitakerchalk.com

By:  /s/ Glenn D. Bellamy
       Glenn D. Bellamy (admitted *pro hac vice*)
       WOOD, HERRON & EVANS, LLP
       600 Vine Street, Suite 2800
       Cincinnati, Ohio 45202
       Telephone: (513) 241-2324
       Facsimile: (513) 241-6234
       gbellamy@whe-law.com

By:  /s/ Joseph Alan Jackson II
       Joseph Alan Jackson II, B.P.R. No. 030603
       SPEARS, MOORE, REBMAN & WILLIAMS, P.C.
       601 Market Street, Suite 400
       Post Office Box 1749
       Chattanooga, TN  37401 1749
       Telephone: (423) 756-7000
       Facsimile: (423) 756-4801
       jaj@smrw.com

       *Attorneys for Plaintiffs*

13

## CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2026, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

By: */s/ Decker A. Cammack*